FRANCES H. SILVERTHORNE, Respondent, v. SUMMIT LUMBER COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted April 7, 1915. Opinion Filed May 4, 1915.

1. **INSTRUCTIONS: Cure by Other Instructions.** In an action against a corporation on a promissory note, which it claimed to have paid by issuing preferred stock for a certain amount and by paying the balance in cash, an instruction to find for plaintiff, if the jury found, among other things, that the note had never been "paid," was not objectionable, as leading the jury to believe that defendant was liable unless the note had been paid in cash; but if it were objectionable by reason of the use of the word "paid," the error would be cured by defendant's instructions, which specifically covered this.

2. **PLEADING: Instructions: Conformity to Issues.** The plaintiff must recover, if at all, on the cause of action stated in the petition, and the issues tried must be within the paper issues, and the instructions must be framed with regard to the paper issues.

3. **BILLS AND NOTES: Action on Note: Pleading: Variance.** In an action on a promissory note alleged to have been lost or destroyed, a petition alleging that the note was either made payable to plaintiff or to her husband and endorsed and delivered by him to plaintiff, that it was delivered either to plaintiff or to her husband for her, that plaintiff did not know which was the case, and that plaintiff was the owner and holder of the note, did not allege title to the note in plaintiff by an indorsement from her husband, but based her cause of action on the fact that the note was hers, whether made out in favor of her husband or to her direct, and hence she

could recover without proving an indorsement of the note to her by her husband.

4. PARTIES: Action: "Real Party in Interest." In an action on a promissory note which had been lost, where it appeared that plaintiff had sent her money to be loaned to defendant, and that the note had either been made payable to and delivered to plaintiff, or had been made payable to plaintiff's husband and delivered to him for her, *held* that plaintiff was the real party in interest, and entitled to recover in her own name, under Sec. 1729, R. S. 1909, regardless of whether the note was made payable to her direct or to her husband.

5. PRINCIPAL AND AGENT: Authority of Agent: Evidence. A letter written to plaintiff's son by another son was not admissible to contradict her denial of knowledge of matters therein referred to, where there was no affirmative testimony that the son was her agent.

6. EVIDENCE: Relevancy. A letter written to plaintiff's son by another son was not admissible against plaintiff, where it did not distinctly appear therefrom to what transaction it referred and no evidence was offered tending to show that it related to the transaction involved in the action.

7. APPELLATE PRACTICE: Review: Weight of Evidence. Appellate courts have nothing to do with the determination of the question as to the weight of the evidence.

8. BILLS AND NOTES: Payment: Sufficiency of Evidence. In an action against a corporation on a promissory note, which it claimed to have paid by issuing preferred stock for a certain amount and by paying the balance in cash, evidence *held* sufficient to support a verdict for plaintiff.

Appeal from St. Louis City Circuit Court.—Hon. *Rhodes E. Cave*, Judge.

AFFIRMED.

*Judson, Green & Henry* for appellants.

(1) (a) If one sues upon a note which is payable to a third person alleging in the petition an indorsement thereof by the payee to petitioner, the said indorsement must be proven as alleged. Dunlap v. Kelly, 105 Mo. App. 1; Mayer v. Old, 51 Mo. App. 216; Dorn v. Parsons, 56 Mo. 601; Covit v. Thorp, 30 Mo.

App. 131, 133, 134; Discount Co. v. Becker, 138 Mo. App. 54; Wade v. Boone, 168 S. W. 360. (b) By alleging the indorsement to her plaintiff made that allegation material and could not afterwards be heard to say that it was mere surplusage. Dunlap v. Kelly, 105 Mo. App. 1. (c) The note sued upon was executed before the adoption of the new Negotiable Instruments Law, consequently its provisions do not apply. Merchants Nat'l Bank v. Birsh, 140 Mo. App. 246, 250. (2) There was a fatal variance between the pleadings and the theory upon which the court gave the case to the jury and allowed them to return a verdict. There was a total failure to prove one essential allegation of the petition. Perry v. Barrett, 18 Mo. 140; Bremen Bank v. Umrath, 42 Mo. App. 525; Dunker v. Schlafeldt, 49 Ill. App. 652; Sweetzer v. Claflin, 74 Tex. 667; Alabama Coal Mine Co. v. Brainard, 35 Ala. 476; Stroder v. Alexander, 9 Port. 441. A plaintiff cannot sue upon one contract and recover upon an entirely different and distinct contract. Clements v. Yates, 69 Mo. 623; Henry County v. Citizens Bank, 208 Mo. 209; Bremen Bank v. Umrath, 42 Mo. App. 525. (3) The trial court committed reversible error in giving plaintiff's instruction No. 1, because that instruction not only permits a recovery without proof of any indorsement by A. D. Silverthorne, but it also presents a false issue to the jury in reference to the payment of the note in cash, when no such issue is made by the pleadings, the answer of the defendant alleging merely that the note had been paid by its surrender and the acceptance of preferred stock of the company in lieu thereof, there being no issue made as to any cash payment of the note, except as $61.40 thereof, while the language of this instruction submits to the jury the issue of a cash payment when no such claim was made either in the pleadings or in the evidence. Whipple v. Peter Cooper Bldg. & Loan Ass'n, 55 Mo. App. 554; Wright v. Fonda, 44 Mo. App. 634; State ex rel. v. Sitlington, 51 Mo. App. 252;

Whitlock v. Appleby, 49 Mo. App. 295. (4) The trial court committed reversible error in ruling out the letter of December 27, 1911, from Albert E. Silverthorne to George M. Silverthorne, respondent's agent, after respondent had expressly admitted that she had authorized George M. Silverthorne to write to the said A. E. Silverthorne about this alleged lost note and the interest thereon, and after respondent herself had offered and read in evidence a letter to George, M. Silverthorne about the same matter, which was admitted to have been dictated by the same A. E. Silverthorne, although it was signed with the stamp of L. D. Reichert. (a) Notice to her duly authorized agent that a certificate of stock had been issued for this note was notice to her. Fowler v. Randall, 99 Mo. App. 407; Edwards v. Home Ins. Co., 100 Mo. App. 695. (b) Besides this evidence tended to impeach respondent and to disprove her claims about this alleged lost note, and tended to show that she actually knew about the issue of the preferred stock. It also tended to disprove, or at least to modify, certain admissions contained in the said letter to George M. Silverthorne which was offered by respondent; and it was admissible for this purpose also. The error of the court in excluding this vital evidence is presumed to have been prejudicial. Holmer v. Farris, 97 Mo. App. 305; Wibracht v. Arman, 89 Mo. App. 363.

*Holland, Rutledge & Lashly* for respondent.

(1) The trial court properly submitted the issues in its instruction number 1, and properly refused the offer of appellant's instruction number 1. (a) Where title is not claimed through endorsement, no endorsement is necessary to entitle the owner and holder of a note to recover in his own name and right. Boeka v. Mueller, 28 Mo. 180; Willard v. Moies, 30 Mo. 142; Lewis v. Bowen, 29 Mo. 202; Davis v. Carson, 69 Mo.

609; Bennett v. Pound, 28 Mo. 598; Harvey v. Brooke, 36 Mo. 493; Revised Statutes 1909, sec. 10021; Dawson v. Wombles, 123 Mo. App. 340; Little v. Bradley, 43 Fla. 402; Cassidy v. First Natl. Bank, 30 Mich. 86; Caldwell v. Meshew, 44 Ark. 564; Bedell v. Carll, 33 N. Y. 581; Hoyt v. Seeley, 18 Conn. 353; Tanner v. Bean, 4 B. & Cres. 312; Coumrine v. Coumrine, 14 Ind. App. 641; Lipscomb v. Talbert, 243 Mo. 1; Gwinney v. Phillips, 3 Durnford & East, 643. (b) A fair construction of plaintiff's petition shows her theory to be that the plaintiff was always the owner of the note in suit, did not acquire it by endorsement or delivery, but that if it was drawn to someone else, it was intended for her, and that she was the real party in interest and had been throughout the life of the note. In such a case the fact of endorsement is immaterial and the allegation of such fact merely descriptive and not essential. (c) Every action must be prosecuted in the name of the real party in interest, hence the endorsement by a payee of a note given to him as agent for plaintiff is unnecessary to enable plaintiff to sue, and allegation and proof is immaterial. Sec. 1729, R. S. 1909. (2) (a) There was no error committed in excluding the letters offered by appellant. They show upon their face that they allude to another note for the sum of $18,000, payable to "the estate of" Frances H. Silverthorne and their connection with the case at bar nowhere appears in the record for the very cogent reason that they have no connection with it. (b) There was no evidence whatever that George Silverthorne was the agent of plaintiff for the purpose of receiving notice; the plaintiff alone was questioned upon the subject and she said "he is my son, and always wanted to help me, but he is not my agent for this or any other business." (c) Suppose he was her agent for the purpose of collecting her note after default in 1911, and then heard for the first time of the existence of the stock in question, that fact would not alter or lessen

the legal liability of defendant upon a note executed in 1904, or bind her as upon an agreement or assent to substitute stock for her note four years earlier. (d) The letters do not amplify or in any way explain the admissions contained in the letter of November 15, 1911, and conceding all that appellant contends for their contents and application would be but self-serving, and are inadmissible upon that ground. (3) The judgment was for the right party. The note given was for the plaintiff's money and was delivered to her; this is undisputed. She did not agree to exchange it for stock. This fact is unchallenged in the whole record; also the jury found it to be true. Substantial justice would not be served by reversing the judgment upon objections which at best are purely formal and highly technical. R. S. 1909, sec. 2082; Fitzgerald v. Barker, 96 Mo. 661; Feary v. Railroad, 162 Mo. 75, 109; Barkley v. Assn., 153 Mo. 300; Peterson v. Transit Co., 199 Mo. 331, 334; McKinstrey v. Transit Co., 108 Mo. App. 12.

REYNOLDS, P. J.—The amended petition upon which this case was tried sets up as the cause of action that defendant made and executed its promissory note, dated on or about July 29, 1904, payable sixty days after demand, in the principal sum of $3361.40, bearing interest at the rate of seven per cent per annum from date; "that said note was made payable either to the plaintiff or to A. D. Silverthorne and indorsed and delivered by him to the plaintiff, and was delivered either to the plaintiff or the said A. D. Silverthorne for the plaintiff, and that the plaintiff does not know whether the said note was made payable to her, or to the said A. D. Silverthorne and indorsed by him, or whether the said note was delivered to her or to the said A. D. Silverthorne for her; but that one or the other of each of said respective alternates is true, but

190MA46

that plaintiff is ignorant of whether it be the one or the other." Averring that plaintiff is the "owner and holder" of the note but that it has been accidentally lost or destroyed and that she had made due and diligent search therefor but that it cannot be found, wherefore it is not attached to her petition or filed therewith, plaintiff avers that she attaches as an exhibit to her petition and files therewith her affidavit as to the loss of the note. Averring that demand had been made of defendant by plaintiff for the payment of the note, the demand beginning on or about November 14, 1911, and continuing until the institution of this action, and that the whole amount is now due, payable and owing to plaintiff, and that interest had been paid on it up to October 27, 1911, but that no interest had been paid since that date, judgment is demanded for the note with interest thereon from and after October 27, 1911, and for costs.

Answering this petition defendant admits that on or about July 29, 1904, it executed its promissory note for $3361.40, "payable to the order of A. D. Silverthorne, who is the husband of this plaintiff, sixty days after demand; but defendant denies that it ever made, executed or delivered any such note payable to the order of plaintiff Frances H. Silverthorne, and it denies that said note above referred to was executed and delivered by it to said A. D. Silverthorne for plaintiff Frances H. Silverthorne; and defendant further says that it has no knowledge or information as to whether said note was ever indorsed over by said A. D. Silverthorne to plaintiff Frances H. Silverthorne, and it therefore denies that there ever was such indorsement of said note." Further answering defendant avers that on or about February 28, 1907, it paid the note which it had made, executed and delivered to A. D. Silverthorne in the following manner: $61.40 in cash on that date and a certificate for thirty-three shares of the preferred stock of the Summit Lumber

Company of the par value of $100 per share, issued by defendant to A. D. Silverthorne at his instance and request and with the knowledge and consent of his wife, the plaintiff herein, in full payment and settlement of the balance of $3300 called for on the face of the note. Whereupon the note was surrendered to defendant and cancelled and destroyed. It is further averred that this certificate for thirty-three shares of the preferred stock was duly issued and delivered by defendant as above stated in payment of the note, to one Albert E. Silverthorne, a son of plaintiff and of A. D. Silverthorne, her husband, who was acting as agent for the owner of the note at that time, and that this certificate has been in the possession and control of Albert E. Silverthorne, son of plaintiff, as such agent from the date of its issue, in February, 1907, until January, 1912, about the time this suit was brought.

A general denial was filed to this answer by way of reply.

There was a trial before the court and jury, resulting in a verdict for plaintiff for the amount claimed, plaintiff executing a bond as required by statute as in the case of a lost note, the bond approved by the court. Filing a motion for new trial and excepting to the action of the court in overruling it, defendant has duly appealed to our court.

There are four errors assigned here. First, to the giving of an instruction on behalf of plaintiff; second, in refusing one asked by appellant; third, error in refusing to admit in evidence certain letters; and fourth, that the trial court erred in not setting aside the verdict on the ground that it was against the weight of the evidence and was not supported by any substantial evidence as to one material allegation.

The first and second assignments may be considered together. The instruction given at the instance of plaintiff told the jury that if it believed from the evidence that defendant, on the date named, executed

its promissory note for the sum named "and if you believe and find from the evidence that said note was thereafter delivered to plaintiff, and that since said note was delivered to the plaintiff the same has been and is now lost or destroyed, and that at the time said note was lost or destroyed, if you so find, plaintiff was the owner of said note, and is now the owner of said note, and if you believe and find from the evidence that the principal of said note has never been paid in whole or in part, and that the interest on said note from and after the 27th day of October, 1911, is due and unpaid, then your verdict will be for the plaintiff in such sum as you may believe and find from the evidence is now due and unpaid upon said note, not exceeding, however," etc.

The instruction asked by defendant and refused was to the effect that if the jury found that defendant executed its promissory note of the date named, "payable to A. D. Silverthorne, plaintiff's husband, or order, and if you further find from the evidence that said note was never indorsed over by said A. D. Silverthorne, to Frances H. Silverthorne, then your verdict herein must be for defendant, even though you may believe that the money represented by said note in fact belonged to plaintiff and not to A. D. Silverthorne."

The instruction, the substance of which we have set out as given for plaintiff, was the only one given at her instance.

Refusing the instruction asked by defendant, which we have set out, the court, at the instance of defendant, gave two instructions. One was to the effect that even though the jury "may find from the evidence that the note sued upon by plaintiff was originally made payable to her or that it was made payable to her husband, A. D. Silverthorne, and was by him indorsed over to plaintiff, yet if you further find that plaintiff sent said note to her son Albert E. Silverthorne, or to the Summit Lumber Company, in 1907, for the purpose

of having the same surrendered or cancelled and pre-ferred stock of the Summit Lumber Company issued in lieu thereof, and if you find that the certificate for thirty-three shares of the preferred stock of the de-fendant company was in fact issued to A. D. Silver-thorne with her knowledge and consent, and the balance of $61.40 was then paid her in cash, then your verdict must be for defendant.''

The other instruction given at the instance of de-fendant was to the effect that if the jury found from the evidence that plaintiff, in 1904, sent her son Albert E. Silverthorne, $3361.40 to invest for her and author-ized him to invest it as he deemed best, ''and if you further find that he thereupon loaned the money to the Summit Lumber Company and issued its note therefor payable either to plaintiff or to her husband, A. D. Silverthorne, and if you further find that thereafter, in 1907, or prior thereto, plaintiff sent said note to her said son, Albert E. Silverthorne, for the purpose of having him make such changes in said investments as he deemed best; and if you further find that thereupon Albert E. Silverthorne then cancelled said note and issued to plaintiff, or to A. D. Silverthorne for her, a check for $61.40, and a certificate for thirty-three shares of the preferred stock of the Summit Lumber Com-pany, then your verdict herein must be for defendant, even though you may believe that plaintiff never knew that said A. E. Silverthorne had cancelled said note and issued preferred stock therefor.''

We have set out all the instructions given as show-ing the manner in which the law of the case was pre-sented to the jury.

The argument of learned counsel for appellant against the instruction given at the instance of plain-tiff, respondent here, proceeds upon the hypothesis that this instruction not only permits a recovery with-out proof of any indorsement of the note by A. D. Sil-verthorne, but that it also presents a false issue to the

jury in reference to the payment of the note in cash, when no such issue is made by the evidence or pleadings, the defendant's answer, it being claimed, alleging merely that the note had been paid by its surrender and the acceptance of preferred stock of the company in lieu thereof, there being no issue made and no evidence as to any cash payment of the note, except as to $61.40 thereof, while the language of this instruction, it is argued, submits to the jury the issue of a cash payment. Hence it is argued that the use of the word "paid" would mislead the jury into thinking that unless the note was paid in cash—in money—defendant was liable, thereby precluding the defense that if it was substantially paid in stock, defendant was not liable. We do not think that any jury of ordinary intelligence, with the evidence as here before it, would have been so misled. But apart from this, whatever may be claimed to be objectionable in this instruction in the use of the word "paid" is certainly cured by defendant's instructions which specifically cover this.

The gravamen of the remainder of this assignment levelled against this instruction, however, is that it permits a recovery without proof of any indorsement of the note over to plaintiff by A. D. Silverthorne, her husband. That is true, and that is the point covered by defendant's refused instruction. Hence the point in decision here really is whether the petition in this case is to be construed as an averment that plaintiff's title to the note is by indorsement.

If plaintiff has made that averment in the petition, she must be held to prove it; if that averment is in the petition and if the trial court failed to take any notice of it by instructions, error was committed.

It is the settled law of this State that a plaintiff must recover, if at all, on the cause of action stated in the petition; that the issues tried must be within the paper issues and that instructions must be framed with regard to the paper issues made. It is hardly neces-

sary to cite authority in support of this rule, but see Whipple v. Peter Cooper Building & Loan Assn., 55 Mo. App. 554, where at page 558, the authorities up to that time are collated. There has been no departure from this rule since then.

It is furthermore the settled law of our State that issues are made by the paper pleadings, and that the issues cannot be changed by an instruction. As see Glass v. Gelvin, 80 Mo. 297, l. c. 302, and Brown v. Chicago & Alton R. R. Co., 80 Mo. 457, l. c. 460, and cases there cited. We are here giving the general rule that the issues as made by the paper pleadings govern, and have no reference to cases originating before the justice or in other courts where written pleadings are not required, and not unmindful of the rule that if parties try their cases on a theory outside of the pleadings, they are bound by such action.

When properly considered, therefore, does the petition in this case aver title to the note in plaintiff by indorsement from her husband? If it does, and if plaintiff has made any such averment in her petition, even if it was an unnecessary averment, she must prove that averment. See Dunlap v. Kelly, 105 Mo. App. 1, and following (78 S. W. 664), where a very full and learned collation of authority in support of the above will be found. There the party pleaded an indorsement and transfer of the note. Says Judge ELLISON, in that case (l. c. 5):

"They cannot be rejected as surplusage as suggested by plaintiff. Concerning the rule which governs what may be termed immaterial allegations and distinguishes them from mere surplusage, it is said: 'The statement of immaterial or irrelevant matter of allegations, is not only censured, as creating unnecessary expense, but also frequently affords an advantage to the opposite party, either by affording him matter of objection on the ground of variance, or as rendering it incumbent on the party pleading to adduce more evi-

dence than would otherwise have been necessary. It is therefore of the greatest importance in pleading to avoid any unnecessary statement of facts, as well as prolixity in the statement of those which may be necessary. If a party take unto himself to state in pleading a particular estate, where it was only required of him that he should show a general or even a less estate, title or interest, the adversary may traverse the allegation, and if it be untrue, the party will fail.' [1 Chitty on Pleading (p. 325), 252.]''

Has this plaintiff in her petition alleged such facts as show that her title to this note is by indorsement from her husband? We have set out the substantial parts of the petition covering this and on consideration of them have arrived at the conclusion that plaintiff has made no such allegation. It is true that she states that she is not possessed of sufficient knowledge to say whether this note was made to her or to her husband, and that if it was made to her husband she is not able to state whether he indorsed it over to her or not, or whether he indorsed it at all. But she distinctly avers that however that may be, the note was delivered to her, or to her husband for her, the legal inference to be drawn from this being that no matter in whose name the note may have been made, it was her note and whether made out in favor of her husband, or made out to her direct, it was hers. So the evidence in the case shows, resorting to that in support of the instruction given and of the action of the court in refusing the one asked by defendant. The evidence can be said to be almost without dispute, that the money evidenced by this note was the money of plaintiff, derived by her from the sale of her own property, transmitted by her through one of her sons to the defendant company, of which that son was also a member, and which company was composed of other of her sons, to be loaned to the defendant company. So that whether defendant company made the note to plaintiff direct, or made it

in the name of her husband, she in effect avers that she was the real party in interest and· as such entitled to recover in her own name as the real party in interest.

So section 1729, Revised Statutes 1909, expressly provides. Construing this section our Supreme Court held in Boeka v. Nuella, 28 Mo. 180, that a promissory note may be transferred by delivery without indorsement so as to enable the holder of the note to sue thereon and recover in his own name. That case, as well as following ones, were cited and approved on this in Davis v. Carson, 69 Mo. 609, and our court followed it in Dawson v. Wombles, 123 Mo. App. 340, 100 S. W. 547, where it is said at page 345:

"Plaintiff's possession of the note was sufficient, under the practice act, to enable her to maintain the action in her own name (Boeka v. Nuella, 28 Mo. 180), and it was not necessary for the jury to find that the note was actually indorsed to her by the payee (Lewis v. Bowen's Admr., 29 Mo. 202) and her possession of it was prima-facie evidence that it had been delivered to her. . . . Therefore, the instruction requiring plaintiff to prove facts, which the law presumes in her favor from the existence of other facts shown in evidence, cast upon her a burden that she was not required to bear; for these reasons the instruction is erroneous."

The instruction referred to was that, to entitle plaintiff to recover, the jury must find, among other things, that the note had been assigned to the plaintiff by the payee. It is true that the note here involved was not, at the time of the trial, in actual possession of plaintiff, but it was sued on as a lost instrument and as the property and in possession of plaintiff when lost.

Nor does plaintiff claim title by assignment. Her claim is that the money was her money; that she does not know whether the note evidencing it was in her name or in that of her husband, but however that may

be, it was always her note, whether assigned to her or not by her husband.

Learned counsel for respondent refer us to section 10,021, Revised Statutes 1909, which provides that the holder of a negotiable instrument may sue thereon in his own name. That is what, as we have seen, our courts had held before the statute. [See Carter v. Butler, 264 Mo. 306, 174 S. W. 399.] We cannot here rest on this statute, however, for the Negotiable Instrument Law in which it appears only went into effect June 16, 1905, and the note here involved was made in July, 1904.

Without further discussion of this proposition then, our conclusion is that there is no error in this instruction which was given by the court at the instance of plaintiff, or in the action of the court in refusing the instruction asked by defendant. That disposes of the first and second assignments of error by learned counsel for appellant contrary to their contention.

We will take up the evidence as to ownership later.

The third error assigned, as before stated, is to the exclusion from evidence of certain letters. One was a letter from Albert E. Silverthorne, a son of plaintiff, to George M. Silverthorne, another son. This is dated December 27, 1911. The body of it refers to another transaction than the one at bar, then follows this sentence: "As for the preferred stock which mother holds, that is not due and it was only out of courtesy that I was willing to take it up, but under the new arrangement it will have to be held in abeyance for a little while. Matters are being gone over for satisfactory adjustment, but this will have to wait a while." It is claimed that George M. Silverthorne was the agent of his mother in the transaction connected with this loan, which, as alleged in the answer, was claimed to have been changed from the form of a loan into preferred stock in the defendant company for $3300 of it, the balance, $61.40, being paid in cash. It was in evi-

·dence in that case that after it was claimed that the money had been changed from a debt into this preferred .stock, that defendant company, up to the time that it ·ceased to pay anything either on the debt or on the stock, had transmitted from time to time to plaintiff ·or her husband, checks as for payment of interest, none of the letters pretending that the payment was by way of dividend on the preferred stock, and while plaintiff acknowledged receiving this $61.40 in a check, .she testified that she supposed it was interest and had ·no information that it was a cash payment of the difference between the par value of the thirty-three shares ·of stock and the face of her note, plaintiff having testified that until she came down to St. Louis from her home in Chicago the day before she testified in this ·case, she did not know that any stock had been issued to her or for her in lieu of her note. Nor did she know that the other amounts sent ·her were dividends on stock but supposed they were payments of·interest on her money as had been made in usual course before the money is alleged to have been changed into the stock.

It is argued that this part of the letter which we have quoted tended to contradict her as to lack of knowledge of the merger of her claim against the company into this stock and the issue of stock to her or her husband for it, and that this letter showed that knowledge of this had come to her long before she came down to the trial of this case, the knowledge not coming to her directly, but communicated to George M. Silverthorne, as her agent, and that she was bound by the knowledge of her agent. The trouble with this contention is that plaintiff, testifying as a witness, said that her son George, to whom this letter was written, was not really her agent; that he was her son and always wanted to do anything he could for her but that he was not her agent to represent her in this business or any other business. In the face of this positive denial of agency, and for the lack of any affirmative testimony

showing agency, we see no error to the action of the court in excluding this letter of December 27, 1911, from Albert E. Silverthorne to George M. Silverthorne.

Another letter, of January 3, 1912, from Albert E. to George M. Silverthorne, offered in evidence by defendant, on objection, was excluded by the court. For the same reason as above stated, lack of proof of agency for his mother in George M. Silverthorne, this letter was properly excluded. It was also properly excluded for another reason, namely, that on the face of it, while there is a reference to the fact that the writer thought he could take care of himself "as well as of his mother," it does not distinctly appear, by the letter itself, what transaction of his mother he was to look after or take care of her in. Nor was any evidence offered tending to show that this letter related to the transaction here involved. We see no error in the exclusion of this letter.

The remaining assignment is to the refusal of the court to set aside the verdict as against the weight of the evidence and as not supported by any substantial evidence.

As an appellate tribunal we have nothing to do with the weight of the evidence.

There is, however, substantial evidence to support this verdict. That evidence tends to show that plaintiff here, along in 1904, sent $3361.40 to one of her sons doing business in New York for investment in that business, presumably. That son, connected with defendant, with its headquarters at St. Louis, having no use for the money in his New York enterprise, sent it to defendant at St. Louis. That concern, defendant here, executed a note payable at sixty days after demand for the amount, interest at seven per cent per annum. As to whether the note was made directly to plaintiff or to her husband, plaintiff herself did not undertake to be positive, but she testified, without equivocation, that the money represented by the note

was her money and that the note belonged to her; that she had it in a safe at her home with another note; that it had disappeared from there, but that she had never sent it to defendant; had never authorized anyone to do so and had never known, until this controversy came up, that the defendant had or claimed to have had it. It was not produced at the trial. The testimony for defendant tended to prove that the note was made to the husband and the interest sent to him, but plaintiff seems to have received that interest when so sent, either from her husband or directly from the company, her testimony being to the effect that she and her husband ran their business affairs together so that what one had the other enjoyed; they kept their accounts "so much together" that she was "not real sure whether" the note was given to her or to her husband, "but it was my money that made the loan and if it was given to my husband it was signed over and put in my possession. I had it and took care of all of the papers at that time."

Matters ran along in this way until sometime in 1907. That this money was transmitted to defendant along about July, 1904, and that it was the money of plaintiff is not seriously denied. Along in 1907, defendant became embarrassed in its financial affairs and plaintiff's sons, who were heavy creditors of the concern, converted their claims against the company into preferred stock, took preferred stock of the company, apparently dollar for dollar, for what the company owed them, and at the same time they treated their mother in like way, changing her loan from a loan into these thirty-three stock certificates of preferred stock. There is not a line of testimony that tends to show that plaintiff knew of this change, and as before noted, so far from plaintiff ever being advised of the substitution of stock for the note, defendant company transmitted to her or her husband, various sums under the form of interest, but which defendant now claims to

have been dividends on this preferred stock, until about October 27, 1911. It appears that the sons of plaintiff, who before then had been connected with defendant, had withdrawn from the company sometime in 1911, and it had passed into the hands of other people. As the company defendant became unable to pay any dividends on the stock and did not pay anything either by way of interest on the loan or dividends on the stock, when payment of the note was demanded, then this matter of the note came up. The officers of defendant, looking through the papers of Albert E. Silverthorne in their office, found these certificates for thirty-three shares of the stock among those papers. Thereupon, and as we understand after the institution of this suit, defendant tendered the certificates of the shares to plaintiff, which she declined to accept, demanding her money. That not being paid, she brought this action.

These are, briefly, the facts. They constitute substantial evidence warranting the jury to arrive at its verdict. We see no reversible error in the case.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.