## L. G. WILCOX, Appellant, v. THE KANSAS CITY WESTERN RAILWAY COMPANY, Respondent.

### Kansas City Court of Appeals, May 26, 1919.

1. **NEGLIGENCE: Pleading: Failure of Proof.** In an action based on the negligence of an interurban company, the petition alleged that defendant's servant negligently failed to protect the plaintiff from an assault by a fellow passenger. The evidence showed that at the time of the assault the car was being operated on the tracks of a street railroad company; that plaintiff paid a separate fare for that part of the transportation; that the street railroad company paid the interurban company for the services rendered by the employees while the car was on the latter's tracks and that during such time the employees were not under the control of the interurban company. *Held*, that there was a failure of proof.

2. **MASTER AND SERVANT: Particular Service.** An employee in the general service of an interurban company who during the time the interurban car is operated along the tracks of a street railroad company is under the latter's control and is paid by the latter, under an agreement between the two companies following out an ordinance, which compels the street railroad company to place its own crew in charge of cars operating on its tracks, is the servant of the street railroad company during that stage of the transportation and the interurban company is not liable for his negligence occurring at that time.

3. **PLEADING: Surplusage.** The rule is that only those allegations necessary to a recovery must be supported by proof while those not necessary to that end may be eliminated as surplusage.

Appeal from Jackson Circuit Court.—*Hon. Thos. B. Buckner*, Judge.

AFFIRMED.

*Atwood, Wickersham, Hill & Popham* for appellant.

*Warner, Dean, McLeod & Langworthy* and *McCabe Moore* for respondent.

TRIMBLE, J.—This is an action against a carrier of passengers for damages arising from an assault upon plaintiff by a drunken, boisterous and quarrelsome fellow passenger. The charge is that defendant's servants in control of and operating the car negligently failed to protect plaintiff.

The answer was a general denial.

At the close of plaintiff's testimony the defendant demurred but was overruled. At the close of all the evidence the defendant again demurred but was again overruled. The jury returned a verdict of $1250 for plaintiff. Afterwards, the trial court sustained defendant's motion for new trial "for the reason that there was a failure to prove the allegations of the petition in that plaintiff was riding on a ticket and that defendant was operating the car and that there was fatal variance between the pleadings and the proof." From the order sustaining the motion for new trial the plaintiff has appealed.

The petition charged that defendant operated an electric interurban railway from Leavenworth, Kansas, southeasterly through the State of Kansas, Kansas City, Kansas, and into Kansas City, Missouri; that on the evening of February 12, 1917, plaintiff boarded a car operated by defendant at Third and Elm streets in Leavenworth, Kansas, to be transported to Kansas City, Missouri; that he "was riding upon a ticket bought and purchased from defendant;" that "while he was thus traveling for hire on defendant's said car, and when said car, enroute for Kansas City, Missouri, had reached a point somewhere within or near the city limits of Kansas City, Kansas, plaintiff was assaulted by a drunken fellow passenger" etc.

The evidence discloses that Chelsea is a station near the western city limits of Kansas City, Kansas, and the defendant's interurban line lies between that point and Leavenworth, Kansas, Chelsea being the eastern terminus of said line. The cars, however, run from Tenth and Main streets in Kansas City, Missouri, to Leavenworth and return, that part of the round trip which

lies between Kansas City, Missouri and Chelsea being run over the tracks of the Kansas City Railways Company, which last named company has the franchise for operating the street railway system of the two Kansas Citys. A person boarding the car for Leavenworth in Kansas City, Missouri, pays a cash fare of five cents which enables him to ride to Chelsea, and from this point a ticket is purchased of defendant entitling the holder to ride from there to Leavenworth, or to Leavenworth and return to Chelsea, if the ticket is for the round trip. Upon reaching Chelsea on the return trip from Leavenworth, the passenger pays a cash fare of five cents entitling him to ride to Tenth and Main in Kansas City, Missouri. The same motorman and conductor (in the uniform of the defendant), are on the car throughout the entire journey; but a separate register is maintained on the car for the cash city fares and a separate account of them are kept and they are turned over to the Kansas City Railways Company.

According to plaintiff's own testimony he boarded the car in Kansas City, Missouri, paid the cash city fare of five cents and rode to Chelsea where he got off and bought of the defendant a round trip ticket which was good for transportation from Chelsea to Leavenworth, Kansas, and from there back to Chelsea. He had made the trip many times before and had always paid his city fare from Kansas City, Missouri, to Chelsea, and there purchased his ticket for the transportation between Chelsea and Leavenworth. He went to Leavenworth and, after transacting his business there, boarded one of defendant's cars to return, using the return portion of his ticket for the transportation to Chelsea; and for the transportation from there to Kansas City, Missouri, he paid the cash city fare of five cents. It is conceded that the assault occurred after the car had reached Chelsea and was on the tracks of the Kansas City Railways Company on its way from Chelsea to Tenth and Main streets in Kansas City, Missouri, and long after plaintiff had paid the five cents city fare.

The question is was there such a variance between the petition and the evidence as to amount to a failure of proof? It will be observed that the petition charges the defendant operated an electric interurban railway from Leavenworth, Kansas, to and into Kansas City, Missouri; that plaintiff "was riding upon a ticket bought and purchased from defendant" and "while he was thus traveling for hire" he was assaulted by a drunken fellow-passenger for the results of which assault the defendant is liable because its servants in charge of said car negligently failed to protect plaintiff. The evidence shows that defendant's line of interurban railway lies between Chelsea, Kansas, and Leavenworth, Kansas; that at the time the assault was committed, plaintiff was not riding upon a ticket purchased of defendant, but upon a cash city fare of five cents paid to the Kansas City Railways Company, and that it is at least a very serious question whether, at the time of the assault, the men in charge of the car were not the servants of the Kansas City Railways Company. If there were no controversy over the question whose servants the men in charge of the car were, at the time they neglected to protect plaintiff from the assault, or rather if there were no question but that they were still the servants of the defendant, then the allegation that the plaintiff was riding on a ticket might perhaps be treated as surplusage. In the absence of any issue over whether he was *a* passenger for hire, the particular manner in which he paid for or was enabled to secure that relationship would be unimportant. The fact that he was a passenger for hire is an essential feature of his cause of action, while the particular way in which he was enabled to become such—whether by purchase of a ticket or by payment of cash fare—is not. The rule is that only those allegations *necessary to a recovery* must be supported by proof while those not necessary to that end may be eliminated as surplusage. [Wessell v. Lavender, 262 Mo. 421, 429.] But defendant's claim of a fatal failure of proof rests not alone on

the fact that the evidence shows that, at the time of the assault, the plaintiff was riding on a cash city fare of, five cents instead of a ticket bought of defendant, but also on the claim that the men in charge of said car were not, at said time, the servants of defendant. And indeed, while there was no contention but that plaintiff was *a* passenger for hire, yet the claim of defendant includes the contention that plaintiff was not *its* passenger for hire at the time of the injury. The petition cannot be interpreted as alleging *generally* that plaintiff was a passenger for hire on defendant's car; it pleaded specifically that plaintiff "was riding on a ticket bought and, purchased from defendant" and "while thus traveling (being carried) for hire" he was assaulted. But the evidence showed that the ticket had to do with only a certain portion of the journey; that the assault did not occur on that portion but did occur on that part governed by the payment of a cash fare different from the ticket and going to a different company. Hence, the difference between the pleading and the proof, as to the specific basis of plaintiff's relationship as a passenger, had a direct bearing upon the question also raised by the proof as to whose passenger he was, whether defendant's or the Kansas City Railways Company's. The well established general rule is that the issues tried must be within the paper issues. [Silverthorne v. Summit Lumber Co., 190 Mo. App. 716, 726.] And it has been held that where the allegations have been set forth with specific particularity, then such specific facts become material—having been made so by the act and choice of the pleader—and must be proved, as alleged. [Dunlap v. Kelley, 105 Mo. App. 1, 7.] For instance, where it was alleged that plaintiff was injured on a southbound car on the west side of a viaduct, he could not recover upon proof that he was hurt on a north-bound car on the east side thereof. [Gardner v. Metropolitan St. Ry. Co., 223 Mo. 389, 420.] Under the peculiar circumstances of this case, therefore, we cannot say the allegation that plaintiff was riding on a ticket may be treated as

surplusage, at least we cannot so say regardless of the question whose servants the men in charge of the car were at the time the assault occurred. If the transportation, the work then being done, was the work of the Kansas City Railways Company and not of the defendant, then plaintiff was the Kansas City Railways Company's passenger and not the defendant's passenger when assaulted. And if this be true, then the allegation as to the ticket goes to an *essential feature* of plaintiff's cause of action, and cannot be regarded as surplusage.

The plaintiff says the defendant joined in submitting to the jury the question of whether it operated the car between Chelsea and Kansas City, Missouri, and that there was evidence to sustain the finding that defendant operated the car. But defendant did not submit that issue until after it was compelled to do so by the court's ruling on the two demurrers defendant interposed. Hence it is not barred or estopped from still asserting that under the conceded facts the transportation between Chelsea and Tenth and Main in Kansas City, Missouri, was the work of the Kansas City Railways Company, and the men in charge of the car, at such time, while in the *general* service of the defendant, were, during that transportation, in the service of the Kansas City Railways Company.

The car was owned by defendant, and it made a continuous journey from its starting place in Kansas City, Missouri to Leavenworth, Kansas, and on its return trip made a continuous journey, with plaintiff riding in it as a passenger, from Leavenworth, Kansas, to Tenth and Main streets in Kansas City, Missouri. The car and the caps of the trainmen had the name of the defendant on them. Defendant advertised an hourly schedule between Leavenworth and Kansas City, Missouri. The cash city fare of five cents which enabled plaintiff to ride from Chelsea to Kansas City, Missouri, was divided by the Kansas City Railways Company, it retaining eighty-five per cent thereof and paying to defendant the other fifteen per cent. The

motorman and conductor of the car remained on the
car throughout its entire journey, and were in charge
thereof throughout. The conductor collected the cash
city fares and also the tickets, but, as stated, kept a
separate account of each. These men were paid by
defendant by check for all the time they were en-
gaged on the car, but the Kansas City Railways Com-
pany reimbursed the defendant for the time the de-
fendant paid the men while engaged in the transporta-
tion between Kansas City, Missouri, and Chelsea. The
plaintiff claims that during the trip between Chelsea
and Kansas City, Missouri, the men in charge of the
car are subject to the orders of defendant's train
dispatcher but clearly the record does not bear this
out. The record shows that while the cars are on that
portion of the trip between Chelsea and Kansas City,
Missouri, and *vice versa,* the dispatcher does not know
where the cars are. All that the dispatcher does when
a car coming from Leavenworth reaches Chelsea is to
telephone orders to go to Kansas City, Missouri, and
when a car going from Kansas City, Missouri, reaches
Chelsea the conductor reports by telephone to the dis-
patcher and then receives orders as to his future move-
ments between Chelsea and Leavenworth.

The evidence relied upon to show that the defendant
was not operating the car between Chelsea and Kansas
City, Missouri, and that the men in charge of the car,
while in the general service of the defendant, were, for
this transportation, the servants of the Kansas City
Railways Company, is as follows:

The last named Company has, as stated, the fran-
chise to operate the street car system of the two cities
of Kansas City, Kansas, and Kansas City, Missouri.
By Ordinance, in effect at the time of the assault in
question, it was provided that no interurban car should
be operated within the city limits over the tracks of
the Kansas City Railways Company, except subject to
and in accordance with the provisions of said ordinance.
By said ordinance the Kansas City Railways Company
was required, at the places where the line of an inter-

urban railway company connected with the line of the former, to receive *upon its own tracks* all passenger cars of such interurban lines, and without delay place *its own crews* in charge of same and carry the cars *as its own,* with the passengers thereon to such points in the center of the business portion of the city as the Board of Control should direct, and to *return said cars to the place where they were turned over to it.* Said ordinance contained the further provision that while such interurban cars were in the possession of the Kansas City Railways Company on its own tracks, it should be *responsible to the passengers,* the public, the city and the interurban lines for any negligent act or omission of the company, its servants, agents, or employees to the same extent as though it was the owner of said car. By another provision of said ordinance, the Kansas City Railways Company was required to pay for the use of the interurban cars, when on the company's tracks, fifteen per cent of the amount of the city cash fare received from each passenger on such interurban car when delivered to the Kansas City Railways Company at the point of connection. This ordinance was binding upon the Kansas City Railways Company and the interurban lines.

For the purpose of a practical operating agreement, carrying out the above provisions of said ordinance, the Kansas City Railways Company and the defendant, on August 1, 1916, entered into a written agreement, aproved by the city authorities, whereby the Kansas City Railways Company (for brevity called the Street Railway) *employed the crews of the interurban* upon such cars at the point of connection *as its own crews* who should, under the provisions of said ordinance and agreement, *operate such cars* in the employ of the street Railway. The defendant, Interurban, agreed that it would employ no men who would thus operate cars over the tracks of the Street Railway without the approval of the latter, and would continue in its employment no such men who were objected to for any reason by the Street Railway, and if for any reason the interurban

should be unable to furnish such crews, then the street Railway should furnish them.  The Street Railway agreed to pay by accounting to the interurban the wages of such crews while engaged in operating on its tracks not to exceed the basis the street Railway pays its other employees engaged in similar service. This written agreement was approved by the city authorities as a compliance with the city ordinance relative to the transportation of the interurban cars on the street railway tracks.

Under this ordinance and agreement, the crew of the interurban car in question became the crew of the Kansas City Railways Company and were its servants *for the particular work* of operating and controlling the car after it left defendant's line and entered upon the city transportation. And the evidence discloses that what was actually done was in strict accordance with the provisions of the said ordinance and written agreement.  The wages of said crew, for the time the car was engaged in the transportation for which the city fare was required, were paid by the Kansas City Railways Company.  The motorman testified that after he left Chelsea and while operating the car between that point and Kansas City, Missouri, and into said city, he did so as an employee of the Kansas City Railways Company; that when operating the car between Chelsea and Leavenworth he received orders from defendant's dispatcher located at Walcott, Kansas, but that when the car was being operated between Chelsea and Tenth and Main Streets in Kansas City, Missouri, the defendant's dispatcher did not even know where the car was and gave no orders for the car till it returned to defendant's tracks at Chelsea.  The oral testimony of defendant's other witnesses was to the effect that the motorman and conductor did become the crew of the Kansas City Railways Company as provided in said written contract, and no one testified to the contrary.

If the provisions of the ordinance and contract thereunder are valid and were complied with, then it is difficult to see why the motorman and conductor did

not become the servants of the Kansas City Railways Company, and *its* crew under the ordinance, *for the particular work* of transporting the car over the tracks of the. Street Railway. The only company having a right to operate cars in the city was the Street Railway. The Interurban was expressly forbidden to do it, and having no right to perform that work it certainly was not its duty to do so. On the contrary, the Kansas City Railways Company was the only company having the right to perform that transportation and it was legally bound to perform it. The transportation being accomplished was the work of the Kansas City Railways Company at the time of the assault. And it would seem that, if the fact that the motorman and conductor were in the *general service* of the defendant as to the transportation, it was authorized to do, does not prevent them from becoming the servants of the Kansas City Railways Company for the particular work it alone could do, then the motorman and conductor were, for the time being and for that particular work, the servants, agents and "crew" of the Kansas City Railways Company. If so, then since the assault occurred while such crew were the servants of said last named company engaged in its work, there was a total failure to prove that the assault occurred while the transportation being done was the work of the defendant and was caused by the neglect of the defendant's servants while engaged in that work. [Healy v. Wrought Iron Range Co., 161 Mo. App. 483.]

The proposition that one, although in the general service of one master, may nevertheless become the servant of another with reference to the particular work of such other, is upheld by the United States Supreme Court in the case of Standard Oil Company v. Anderson, 212 U. S. 215, 220, 221, 225. In that case the plaintiff was a longshoreman in the employ of a master stevedore who, under contract with the Standard Oil Co. was engaged in loading a ship with oil. He was injured by the negligence of a winchman and obtained judgment in the lower courts. The question was wheth-

er the winchman was the servant of the defendant or the stevedore in the work of loading the ship. In that case the winchman was in the general employ of the defendant Standard Oil Company, but it was contended that in the particular work of loading the ship he was the servant of the stevedore. The court said this might be true even though the winchman was selected, employed, paid and could be discharged by the Standard Oil Company. The court further held that the reason for the rule that the master is liable for the wrongs of his servant is because the latter is doing the former's work and a master is bound to conduct his affairs so that others are not injured; that the ultimate and controlling questions in the determination of whose servant the wrongdoer was at the time of the wrongful or negligent act, are: Whose work is being done? And whose is the power of control?

"One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation. It is insisted by the defendant that the winchman, though in its general employ, had ceased to be its servant, and had become for the time being, with respect to the work negligently performed, the servant of the master stevedore. This may be true, although the winchman was selected, employed, paid and could be discharged by the defendant. If it is true, the defendant is not liable."

"It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men became *pro hac vice* the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with

another than that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.''

''In many of the cases the power of substitution or discharge, the payment of wages and other circumstances bearing upon the relation are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control.''

Applying these principles to the case in hand, it would seem to logically follow from the facts and circumstances herein that the men were, at the time of the assault, in the service of the Kansas City Railways Company. The work being done was the work of that company, and work that the defendant could not do, nor did the defendant have any control over the men in charge of the car while it was in use on the tracks of the street railway.

This ruling does not conflict with the decision in McAdow v. Kansas City Western Railway Co., 192 Mo. App. 549. In that case the question was whether the defendant was engaged in interstate commerce, which, of course, depended upon whether the defendant was engaged in transporting the passengers over the streets of, and into, Kansas City, Missouri. It was held that it was so doing. But there the facts shown were

not only that the men in charge of the car were employed, paid and discharged by the defendant, but at the time of the injury the city street railway was in the hands of the receivers, and there was no contract or regulation in reference to the city transportation *that was being observed*. The employee in that case, who was injured while concededly on the line of the interurban, had no intimation that he was in the employ of anyone except the interurban; while in the case at bar the men knew, and so testified, that they were acting for the street railway company, and this evidence was admissible. [Smith v. M. K. & T. Ry. Co., 58 Mo. App. 80.] In the case at bar, the dispatcher knew nothing about the operation of the car between Chelsea and Tenth and Main in Kansas City, Missouri, while in the McAdow case, the car while in the work of city transportation was subject to orders from the Kansas Side. In other words, there being no contract or regulation between the interurban and city street railway that was being observed, and the interurban retaining control over its employees during such city transportation, the interurban was in fact engaging in such transportation for itself and as its own work and with its own servants. The above-mentioned matters wherein the McAdow case differs from the one at bar, are mentioned not only in the opinion of the State Court, but are also pointed out by the Supreme Court of the United States to which the case was taken on writ of error. [Kansas City Western Railway v. McAdow, 240 U. S. 51.] The Court at page 53, say:

"There was evidence that in fact at the time of the accident the only control exercised by the Missouri Company was to put a conductor upon the car to receive the fares, that while in Missouri it received its orders from the Kansas side, and that the Company was in the hands of receivers who seem not to have recognized the contract."

Not only does the evidence in this case show that the car was operated in accordance with said ordinance and contract, but the presumption is they were obeyed

and the work done by those thus authorized and in the manner provided for. [Chouteau v. Missouri Pacific R. Co., 122 Mo. 375; Graafe v. St. Louis Transfer Co., 224 Mo. 232, 257; Moorshead v. United Railways Co., 203 Mo. 121, 158.] Nor did the ordinance and contract create a partnership or a joint operation of the road. [Moorshead v. United Railways Co., 203 Mo. 121, 151; Ellis v. Brand, 176 Mo. App. 383, 392; Insurance Co. v. Railroad Co., 104 U. S. 146; Hartan v. Eastern R. Co., 114 Mass. 64.]

For the foregoing reasons the difference between the pleading and the evidence was much more than a variance which requires the observance of sections 1846 and 1847, Revised Statutes 1909, before advantage can be taken of it; it amounts to a failure of proof, and the court's action in sustaining defendant's motion for new trial is affirmed. All concur.