## TEMPLEMAN et al. v. WALKER.

No. 23274.    Oct. 30, 1934.

Withdrawn, Corrected, Refiled, and Rehearing Denied Dec. 24, 1935.

Maxey, Holden & Holleman, for plaintiffs in error.

Holtzendorff & Holtzendorff and C. B. Holtzendorff, for defendant in error.

PER CURIAM. This was an action instituted by W. L. Walker, as plaintiff, against W. E. Templeman, N. E. Templeman, and J. A. Pringle, as defendants, in the district court of Tulsa county, the petition being filed on January 29, 1931. The petition is very short, and, omitting the caption, reads as follows:

"Now comes the plaintiff and for his cause of action herein alleges:

"(1) That heretofore, and on or about the 8th day of February, 1926, this plaintiff and the defendants herein, W. E. Templeman, N. E. Templeman, and J. A. Pringle above named, entered into a written agreement of partnership of which a true and correct copy is hereto attached, hereby made a part hereof and marked 'Exhibit A'.

"(2) That although this plaintiff has always complied with all of its terms the defendants, and each of them, have utterly failed in the performance of the covenants and requirements of the said agreement on their part to be kept, done and performed or to account for their transactions thereunder and have dissipated the assets and mismanaged the affairs of the said partnership, and are and have been appropriating its property and effects to their own uses.

"Wherefore, the plaintiff asks that a receiver be appointed for the said partnership, and that an accounting be had and taken of its transactions and affairs and that it be dissolved and for such other and further relief as equity and justice may require."

This petition was signed by counsel for plaintiff and was verified by the plaintiff.

Exhibit "A" attached to the petition is a contract, evidenced by a letter dated February 8, 1926, addressed to the plaintiff, signed by the defendants, and having thereon the following indorsement:

"The above is correct and is hereby accepted and agreed to. Tulsa, Oklahoma, Feb. 8, 1926. W. L. Walker."

Inasmuch as this instrument is the partnership agreement alleged by the plaintiff to have been entered into by him with the defendants, and likewise admitted by the defendants to have been entered into by them with him, and is the instrument by which the rights of the parties hereto are to be measured, it will be here copied in full, with the exception of the schedule of the leases therein referred to. It is as follows:

"832 Kennedy Building
"Tulsa, Oklahoma,
"February 8, 1926.

"Mr. W. L. Walker,
"Tulsa, Oklahoma.

"Dear Sir.

"We have this day executed in your favor our note in the sum of $3,500, due 75 days from date, with interest at the rate of

eight per cent. per annum from maturity, for which you have paid us a like amount in cash, the receipt of which is hereby acknowledged.

"We have entered into an agreement with O. E. Bradley, dated January 19, 1926, whereby we have agreed to take over a certain block of leases in Butler county, Kan., and drill a well thereon for oil and gas, said leases covering the following described land: * * *

"The $3,500 above mentioned is to be used for the payment of bonuses and abstract expenses on these leases. Out of the proceeds from the sale of all or any portion of the above leases, we are to reimburse you in the sum of $3,500, and the note we have executed to you is to be returned to us upon such payment.

"It is understood that we are to deduct from sums received for the sale of said leases, in addition to the amount of said note, such sum or sums as will cover fully the cost of drilling, equipping and completing a well for oil and gas on said block of acreage, together with all expenses incurred by us in connection with the same.

"It is also understood that the assignments to said leases are held in the name of N. E. Templeman and when we have reimbursed you in the amount of the above-described note and have been reimbursed ourselves for expenses incurred and hereafter to be incurred in connection with the drilling, equipping and completing of said well, we are to deliver to you assignments covering an undivided one-fourth interest in and to whatever portion of the above-described leases we have remaining unsold. Of course, in the event that the sale of the leases should more than cover the amount of said note and expenses incurred for the drilling, equipping and completing of said well, you are to have your one-fourth of such money or profit on said block.

"It is further understood that in the event of production in said well and it should become necessary to drill further wells or to develop the property, you will advance to us, or reimburse us from time to time, as statements are rendered, for moneys expended by us for such operation and development, your proportionate part, or one-fourth of such amounts so expended by us.

"This letter is signed in duplicate, either copy of which may be regarded as the original.

"If the above is your understanding of this transaction, kindly note your acceptance on the bottom of this letter and return the original to us.

"Yours very truly,
"(Signed) W. E. Templeman.
"(Signed) N. E. Templeman.
"(Signed) J. A. Pringle.

"The above is correct and is hereby accepted and agreed to. Tulsa, Oklahoma, Feb. 8, 1926. W. L. Walker."

Without in any manner questioning the sufficiency of the allegations of this petition, the defendants filed thereto their answer and cross-petition, which may be summarized as follows:

(1) A general denial as to all matters not specially admitted.

(2) An admission that they entered into a contract with the plaintiff, evidenced by the letter of February 8, 1926, a copy of which is attached to the petition, marked Exhibit "A".

(3) An admission that a mining partnership was created by the terms of said contract and that the partners thereto were mining partners in so far only as said interests relate to the property described in said contract; that is, that the parties were not general mining partners, but partners in the leaseholds referred to in such contract.

(4) A denial that the plaintiff had complied with the terms of the contract on his part, and a denial that the defendants had failed to comply with its terms on their part.

(5) An allegation that prior to the entering into of such contract, on the 19th day of January, 1926, the defendants had made a contract with one O. E. Bradley whereby said defendants, through N. E. Templeman, as trustee, agreed to drill a well on a part of the acreage described in said contract, a copy of which contract with Bradley is attached to the answer, marked exhibit "A". That said Bradley held such leases under and by virtue of an escrow agreement deposited with the Citizens Bank of El Dorado, Kan., a copy of which escrow agreement is attached to the answer, marked Exhibit "B". That the said Bradley was by such contract obligated to commence the drilling of said well prior to March 1, 1926, and that the defendants, by reason of their contract with the said Bradley, agreed to commence said well on said date.

(6) That pursuant to said contract they commenced said well on February 17, 1926, and drilled the same in accordance therewith to a depth of 2,820 feet, and completed such well on August 21, 1926, and that it was a dry hole and was abandoned.

(7) That by the terms of the contract between the plaintiff and defendants, the de-

fendants were to sell, or attempt to sell acreage out of said block and from the proceeds thereof were to reimburse themselves for the expense and cost of drilling, equipping, and completing said well, together with all expense incurred in connection with the same, and in the event the sale of leases should more than cover said expenses the plaintiff was to have one-fourth of such excess, or the profit on said block, and the defendants were to have three-fourths, and an assignment to an undivided one-fourth interest in the leases remaining unsold should be made to the plaintiff after the defendants had been reimbursed as aforesaid.

(8) The defendants then allege that they sold leases out of said block and for which they received $10,960; that the cost of drilling, equipping, and completing such well, together with all expenses incurred in acquiring said leases, and all incidental expenses thereto, were $16,355.23, leaving a net loss in the enterprise of $5,395.23. That a full, true, correct and complete account of the sale of acreage and the cost of drilling said well is attached to said answer, marked exhibit "C" and duly verified.

(9) That the defendants had paid all of such loss, one-fourth of which amounting to $1,348.80, was chargeable to the plaintiff, and that by reason of the contract of partnership between said parties, giving the plaintiff a one-fourth interest in the profits, there was implied the condition that he should pay one-fourth of the loss and that he had refused and neglected to pay the same, or any part or portion thereof.

(10) Defendants then denied that they had mismanaged the transaction or dissipated the estate, and denied that the plaintiff was entitled to a receiver, and alleged that there was nothing then left in said partnership for a receiver to act upon or take charge of.

Then followed the prayer of the answer, as follows:

"Wherefore, these defendants, having fully accounted, pray that the plaintiff take nothing and that they have a judgment against the plaintiff for the sum of $1,348.80 and interest at the rate of 6% per annum from and after August 21, 1926, the date said well was completed, and for their costs in this behalf expended."

(Signed by counsel for defendants)

Then follows a cross-petition by the defendants, in which they make a part thereof all of the allegations of their answer and set up as an affirmative cause of action against the plaintiff a claim for what they alleged was his proportionate part of the loss in such transaction, to wit, the sum of $1,348.80, with interest.

This answer and cross-petition was verified by N. E. Templeman, one of the defendants.

Exhibit "A" attached to the foregoing answer and cross-petition was a contract between O. E. Bradley of Emporia, Kan., and N. E. Templeman, trustee, of Tulsa, Okla., which, in substance, recites that the said O. E. Bradley owned certain oil and gas leases which were held in escrow in the Citizens State Bank of El Dorado, Kan., under an agreement to drill a well for oil and gas thereon, which was to be started on or before March 1, 1926, and be drilled with due diligence to completion. That second party was desirous of drilling this well and agreed with the said O. E. Bradley that he was to sell to second party the leases, describing them, and an additional 40 acres to be agreed upon later. That the party of the first part (O. E. Bradley) was to perfect title to the land covered by such leases, but second party (Templeman, trustee) agreed to pay for the abstracts.

As a further consideration for the transfer of the leases from Bradley to Templeman, the said Templeman, as second party, agreed to pay $3 per acre for the leases so described, and the 40 acres to be agreed upon later; also, to assume the obligation of drilling the well above referred to in the escrow agreement between the landowners and Bradley. The consideration of $3 per acre was to be paid when second party's attorney accepted title to the lands covered by the leases.

It was then expressly provided that the deal should be closed and transfers of title made and money paid on or before February 8, 1926.

Exhibit "B" attached to the answer and cross-petition was a copy of the escrow agreement between O. E. Bradley and the parties who had executed the leases hereinbefore referred to, and which were in escrow in the Citizens State Bank of El Dorado, Kan. It was dated November 4, 1925, and provided, in substance, that whereas the said O. E. Bradley, who was party of the second part in such contract, was attempting to secure oil and gas leases on a block of acreage of sufficient size to justify drill-

ing of a test well for oil and gas on the block of acreage, of which the leases were a part, that it was agreed that such contract should be deposited in the Citizens State Bank of El Dorado, Kan., and the leases should remain there until operations were commenced for the drilling of a well, and which commencement should take place not later than March 1, 1926. That when said well was commenced and proof was furnished to the escrow agent of such fact, it was to deliver such leases to the said O. E. Bradley, or his assigns.

That if such well was not commenced on or before March 1, 1926, the leases were to be returned to the first parties, who were the lessors.

Exhibit "C" to the answer and cross-petition, although not so marked in the case-made, is an itemized statement of the expenditures made by the defendants in the procurement of such leases from O. E. Bradley; expenses of abstracts of title; cost of drilling the well and other items in connection therewith, showing a total expenditure of $16,355.23; likewise, a statement of the amount derived from the sales of leases, aggregating $10,960, leaving an excess of the amount expended over the amount received of $5,395.23, and which account was verified by N. E. Templeman.

To this answer and cross-petition the plaintiff filed his reply, in which he real-leged all of the matters in his petition set forth, and denied all of the matters alleged in the answer of the defendants, with the exception that he admitted and alleged that he was informed by the defendants at the time he entered into the contract evidenced by Exhibit "A," attached to his petition, of an agreement between the defendants and O. E. Bradley with reference to the acreage referred to therein, but denied that he ever saw the agreement or knew the contents thereof, and alleged that the defendants stated and represented the fact to be that they had already negotiated the sales of enough acreage involved to repay him and meet the expense of the initial drilling operations necessary to acquire the delivery of the assignments of the various leases thereon, but that their statements and representations to him in that respect were untrue, known by them at the time so to be, and were made to him with the intent and purpose of exciting his belief therein and reliance thereon, and that he did believe them and rely on them and would not have otherwise invested his $3,500 on the repre-

sentations so made to him, and that they were thus estopped to assert any claim or demand otherwise.

For his answer to the cross-petition he adopted the same allegations and prayed for the relief asked for in his petition. This reply was verified by the plaintiff.

The defendants moved to strike out a portion of this reply, which was overruled by the court when the case came on for trial, but which ruling we consider immaterial at this time.

Upon these pleadings the case went to trial, the plaintiff being called as a witness in his own behalf, and over the objections and exceptions of the defendants was permitted to produce a $3,500 note signed by the defendants, and to offer the same in evidence, and upon being asked as to whether it had been paid, defendants objected thereto as incompetent, irrelevant, and immaterial, and not within the issues presented by the pleadings, which objection was overruled, and to which the defendants excepted. He was then asked to what extent it had been paid, to which similar objections were made and a colloquy took place between counsel for both sides and the court. When the question was finally propounded by counsel for plaintiff, "Well, I will change it to advancement, if you like; I don't care," to which objection was made by counsel for defendants, they asked leave to offer evidence in support of their objections that the question was incompetent, which was permitted by the court. Whereupon, counsel for defendants offered in evidence in support of their objections the original court files in an action filed in the common pleas court of Tulsa county, wherein W. L. Walker was plaintiff and W. E. Templeman, N. E. Templeman, and J. A. Pringle were defendants, consisting of the petition, answer of the defendants, and a dismissal of said action, without prejudice, by the plaintiff; such action having been filed on January 15. 1931, and dismissed on April 4, 1930. The date of filing or the date of dismissal, one or the other, is evidently a clerical error. The offering of these files in support of the objection as made, was a novel proceeding, to say the least, but no objection being made by the plaintiff, they were received in evidence.

The pleadings are too voluminous to embody herein, but the petition in question by the plaintiff against the defendants was an action at law on the promissory note for $3,500, which had been given by the de-

fendants to the plaintiff pursuant to the contract evidenced by the letter of February 8, 1926, alleging payments thereon, and which are shown as indorsed upon the note, a copy of which is attached to the petition of the plaintiff, aggregating $2,500, and seeking to recover the balance due, with interest, attorneys' fees and costs.

In the answer of the defendants (the parties plaintiff and defendant in that case were the same as in the case at bar) they admitted the execution and delivery of the $3,500 note, and admitted that they made partial payments thereon, executing certain renewal promissory notes for the unpaid balance; that thereafter, on December 17, 1927, they executed and delivered to the plaintiff three promissory notes aggregating $2,000 in renewal of such former notes, and that thereafter the last set of notes was paid and satisfied by the Elaine Oil Company, a corporation, at a time when the defendants were financially embarrassed and had no money or property, and were wholly unable to make any payments on the notes, paying to the plaintiff the sum of $1,000, evidenced by its check dated April 28, 1928, for that amount, and that said transaction was a valid accord and satisfaction settlement and compromise of the notes owned by the plaintiff and the indebtedness represented thereby, and that the same had been fully settled, adjusted, compromised and paid.

The dismissal of the action offered in evidence was an ordinary dismissal by the plaintiff, without prejudice.

Argument was then had upon the objections made by the defendants, in the course of which the question was discussed as to whether or not the instant suit was an action upon the note, and in the course of which counsel for defendants stated:

"That issue is not in this case at all. He sues here and says he wants $3,500, that they became a partnership, operated this property, squandered these funds, misappropriated it, put it in their pockets, spent it for whisky and didn't pay him any part of it; that is what this case is about. He could not recover on this note, and he could not recover on this obligation, because the obligation of his contribution to the partnership is not here; it is not his contribution he is suing for; he is suing for his part of the profits of this transaction—for accounting. And therefore I say it is incompetent, and it merely injects another issue, and we have to start in and call the Elaine Oil Company."

Thereupon, the court propounded the following question to counsel for plaintiff:

"The Court: You are not seeking here to recover on the note; you are seeking— Mr. Griggs: Recovery of the money advanced. The Court: There was a note given for $3,500. Mr. Griggs: Yes, sir; I am not suing on the note; the note was for an advancement which they admit in their answer. I asked whether that has ever been paid back. The Court: The $3,500? Mr. Griggs: Yes, sir. I have no objection at all to these things, because they are just so much waste paper. I threw them in the waste basket myself purposely because I knew that I could not recover on that note under the circumstances. This was a partnership and these partners didn't have to pay off the personal note; they had a right to come back and ask us for an accounting, something or other, so I did it myself. Mr. Maxey: If the court please, if that issue should come in, of course, we would have to amend our pleading and plead the Elaine Oil Company's payment of it and of the whole transaction, and thrash out something that is not in this lawsuit; if it is, if that goes in why we would have to plead to it. We did not plead to it because it is not in here and we would have to ask Your Honor to continue this case and let us plead to it. if it is going in here. We have not plead to it; we have no pleading—we did not litigate that question; it certainly is not here. The Court: This is just a suit for accounting, of course. Mr. Maxey: Yes; well, he didn't account for the— Mr. Griggs: I am not asking for that $3,500 except under the terms of that contract. The Court: I will let him answer it; overruled; we will see where we are. Mr. Maxey: We except."

Thereupon, the witness answered the question "No, sir," and proceeded to testify that $2,500 had been paid. leaving a balance of $1,000, and interest; that the defendants had made altogether five different payments; that the payments were only made on the principal and not on interest.

Thereupon, the note in question was produced and offered in evidence, over the objections and exceptions of the defendants. The note in question was dated "Tulsa, Oklahoma. February 8, 1926," for the principal sum of $3,500, due April 24, 1926, payable to W. L. Walker, with interest at 10 per cent. per annum, after maturity. payable annually until paid, and bearing upon it five indorsements, one of $400, paid June 10, 1926; $200. paid September 14, 1926; $400, paid September 30. 1926; $500. paid September 20, 1927; and $1,000, paid May 10. 1928.

There is no controversy about the defend-

ants having paid the first four indorsements above referred to, and the contention as to the payment of the note revolves around the indorsement of $1,000, credited on the note under date of May 10, 1928, which is the payment made by check of the Elaine Oil Company, dated April 28, 1928, which $1,000 check the defendants claim was given by it for the purpose of paying in full their debt to the plaintiff, and upon which the plea of accord and satisfaction is made.

As far as the facts in this case are concerned, and regardless of the pleadings, the case seemed to revolve around the proposition as to whether or not this original note for $3,500, with interest thereon, had been paid by the defendants, and that controversy in the last analysis resolved itself into the question of whether or not the payment of $1,000, made by the Elaine Oil Company to the plaintiff by its check of April 28, 1928, and which was credited on the note under date of May 10, 1928, was made under such circumstances as to constitute an accord and satisfaction so as to discharge the balance of $2,000 due thereon.

We will refer to the evidence again later, on.

We will first dispose of the question as to the nature of this action. It is repeatedly stated by counsel for defendant in error, plaintiff below, that this is an action at law; while it is contended by counsel for plaintiffs in error that it is an equitable action. This is not an action to recover a balance due upon account, where the plaintiff pleads an itemized account, leaving a definite balance due which the plaintiff claims is owing to him by the defendants; nor is it upon an account stated, where the balance due upon an itemized account has been agreed upon or in some other manner set at rest. The plaintiff does not sue for any definite amount, nor allege that any sum certain is owing to him by the defendants. He specifically alleges that they formed a partnership, as evidenced by the letter of February 8, 1926, and alleges that the defendants have dissipated the assets and mismanaged the affairs of the partnership and have been appropriating its property and effects to their own uses and asks for an accounting and the appointment of a receiver. The action is in the nature of a bill of discovery and asks the court to take an account of the affairs of the partnership; that the partnership be dissolved and for such other and further relief as equity and justice may require. The plaintiff does not even pray for

a money judgment, although that would follow if the court upon such accounting found that there was a balance due to the plaintiff.

By virtue of the alleged partnership, a fiduciary relationship was created between the parties thereto, the obligations of which the plaintiff claims the defendants have violated. The rule is well stated in 1 Corpus Juris, 614, as follows:

"An action for an account in equity is an action for the balance found due on taking the account; it is not a series of actions for the various items included in the account, nor a series of actions for damages for breaches of covenants to make particular payments."

This does not mean that an accounting may not be had in an action at law involving a large number of credits and debits, or of mutual accounts, but the relief sought in the case at bar is so clearly within the jurisdiction of a court of equity that we find no difficulty in reaching the conclusion that it is that character of an action and controlled by the procedure pertaining thereto.

The rights of the parties are governed by the contract evidenced by the letter of February 8, 1926, addressed to the plaintiff by the defendants, bearing thereon the indorsement signed by him:

"The above is correct and is hereby accepted and agreed to. Tulsa, Oklahoma, February 8, 1926. W. L. Walker."

In this case the rights of third parties are not involved; the sole question being what are the rights and obligations of these parties among themselves.

The plaintiff alleged that this contract constituted the plaintiff and the defendants a partnership, without any qualifying language. The defendants admit the execution of the contract and that it constituted the parties a mining partnership in the particular transaction referred to in the letter. If the rights of third parties were involved in this action, a very different question would arise, as it is very easy for the parties to a joint adventure to so conduct themselves as to create a liability to third parties which does not exist as between themselves. This contract shows that the defendants, through N. E. Templeman, had entered into a contract with O. E. Bradley on January 19, 1926, whereby they agreed to take over a block of leases in Butler county, Kan., and drill a well thereon in

order to fulfill a contract which he had with the lessors in such block of leases to drill a well on such block and commence drilling operations thereon not later than March 1, 1926. In order to get these leases the defendants had to pay Bradley $3 per acre for the leases, and pay for the expenses of abstracts exhibiting the title to the property covered thereby. In order to get the money to pay for these leases, the defendants wrote the letter to the plaintiff dated February 8, 1926, evidencing the fact that he had advanced $3,500 to the defendants, which was to be used for the payment of bonuses and abstract expenses on the leases. The leases were to be sold and out of the proceeds of the sale thereof the plaintiff was to be reimbursed for his $3,500, evidenced by a note executed by the defendants to the plaintiff, due 75 days from date, with interest at the rate of 8 per cent. per annum from maturity, and the contract recites that for this note the plaintiff had advanced this sum of money to the defendants, and the receipt thereof was acknowledged. The contract then provides that the $3,500 referred to is to be used for the payment of bonuses and abstract expenses on the leases, and that out of the proceeds from the sale of all or any portion of the leases the defendants are to reimburse him for the sum of $3,500, and the note which they had executed to him was to be returned to them upon such payment. It then provides as follows:

"It is understood that we are to deduct from sums received for the sale of said leases **in addition** (emphasis ours) to the amount of said note such sum or sums as will cover fully the cost of drilling, equipping and completing a well for oil and gas on said block of acreage, together with all expenses incurred by us in connection with the same."

Provision is further made by the contract that the assignments of the leases are held in the name of N. E. Templeman, and that when the defendants had reimbursed the plaintiff in the amount of the above-described note, and had been reimbursed themselves for expenses incurred and to be incurred in connection with the drilling, equipping, and completing of said well, they were to deliver to him assignments covering an undivided one-fourth interest in the unsold portion of such leases; but, in the event that the sale of the leases should more than cover the amount of such sale and expenses, that he was to have one-fourth of the money or profit on the block.

It then provides that in the event of production in said well and it should become necessary to drill further wells or develop the property, he is to advance to defendants, or reimburse them from time to time for his proportionate part, or one-fourth of such amount so expended by them.

We are convinced that the proper interpretation of this contract is that the plaintiff advanced $3,500 toward this joint adventure, characterized by plaintiff as a partnership and by the defendants as a mining partnership, and which was to be used for the purpose of purchasing the leases in question and the expenses of abstracts of title. That the defendants assumed the burden of drilling and equipping the well. That out of the sale of such leases, the plaintiff was to be first reimbursed for this $3,500, represented by the promissory note signed by the defendants, and the balance of the proceeds derived from the sale of the leases was to be used in the drilling and equipment of the well, and expenses incident thereto.

The parties to this contract were evidently optimists for no provision was made by the contract for the payment of any amount of expenses incurred in the drilling and equipping of this well in excess of the amount derived from the sale of leases, if it was insufficient for such purpose. Nevertheless, it is our opinion that the contract is plain upon the proposition that the only amount which the plaintiff was to contribute toward the drilling of this first well was the $3,500 evidenced by the note signed by the defendants, and that this note was to be first paid out of the proceeds of the sale of leases and the balance applied to the expenses of drilling the well. This interpretation is reenforced by the language used in such contract, wherein it is said that the defendants were to deduct from sums received for the sale of said leases, in addition to the amount of said note, such sum or sums as would cover the cost of drilling, etc.

While we have spoken of this $3,500 as a contribution from the plaintiff, yet, in fact, he did not contribute it, but merely contributed its use, and took therefor the original promissory note for $3,500 signed by the defendants, payable on April 24, 1926, and the contract provided a source out of which the note was to be paid, to wit, from the sale of the oil and gas leases purchased with this money, and inasmuch as provision is made in the contract for the payment by the plaintiff of his proportionate share, to wit, one-fourth of the expenses of drilling any further wells to be put down on the

property, it excludes the idea that he was to contribute anything additional to the expense of drilling the first well. In other words, the defendants had to have the money to procure these leases and he loaned it to them for that purpose, under an agreement for repayment and took from them the original $3,500 note, and further provided that he should be repaid out of the sale of leases, and which, in our judgment, was to be a priority payment therefrom.

The evidence shows that the defendants did drill this well, and that it was completed the latter part of August, 1926, and proved to be a dry hole. Part of the leases were sold and brought a total of $10,960. The cost of procuring the leases and drilling the well, and matters incidental thereto, amounted to $16,355.23, according to a statement prepared by the defendants attached to their answer and marked exhibit "C."

Upon the trial of the case the defendants started in to offer evidence to substantiate the correctness of the expenditures of money on this project as set out in exhibit "C," and which made up the total of $16,-355.23, above referred to. The last item of this account was the sum of $300 charged to this project for one-fourth of a stenographer and accountant's salary for six months at $200 per month, the total being $1,200, one-fourth of which was $300, and which was the only item questioned by the plaintiff. On page 161 of the case-made, and after some questions had been asked by counsel for defendants, we find the following statement by Mr. Griggs, counsel for plaintiff:

"Let us save this record, and time too: I don't propose to be quarrelsome. I will admit the accuracy of this statement and that you would produce vouchers for it—could—but I am not certain as to the reasonableness of the $300; to whom was that paid?"

A further colloquy took place between counsel for plaintiff and defendants and the court, the net result of which was that counsel for plaintiff admitted the correctness of the account prepared by the defendants of their transactions in this project, with the one exception of the $300 item for the salary of the stenographer and accountant, following which defendants offered evidence in support of that item.

As to the manner in which the note was handled, the evidence shows that three payments were made thereon, totaling $1,000, the last being a $400 payment made on September 30, 1926. On April 1, 1927, the defendants executed to the plaintiff four promissory notes, three for $500 each and one for $1,000, each due 90 days after date, bearing interest at 10 per cent. per annum after maturity, representing the unpaid balance on the $3,500 note. There is evidence to the effect that the defendants requested the surrender of the original $3,500 note, and that plaintiff told them that it was in his strongbox, and that he would get it in a few days and return it to them, but which was never done, and there is also evidence to the effect that he subsequently told them that he had found the note and torn it up. He, however, denies that he agreed to return it, or that he told them he had torn it up.

Thereafter, these renewal or extension notes became due, and the defendants paid him an additional $500, and the plaintiff surrendered to them the four notes which they had executed on April 1, 1927, and one of those $500 notes bears upon it the notation "Paid by Check No. 493. $500.00. W. L. Walker. September 19, 1927."

Thereafter, the defendants gave to the plaintiff three new notes representing the unpaid balance of $2,000, one due in 30, one due in 60 and one due 90 days after date.

We now reach the point where the real controversy in this case arises. The defendants claim that the plaintiff came to their office and represented that he was desperately hard up for money and wanted them to pay something on the notes, and that one of them told him that they were awfully hard up for cash, and that there was not a place in the world that he could get the money with which to pay the plaintiff, and that he said that if they would give him $1,000, some way he would cancel the notes; that one of the defendants again told him that he did not know where he could get the money, but that he would see what he could do, and that he took it up with the Elaine Oil Company, and told them what kind of a deal he could make, and that they agreed to take up the notes for him; that the Elaine Oil Company is an Oklahoma corporation, doing business in this state, of which one of the defendants was president, and it had nothing to do with the transaction between the defendants and the plaintiffs on this acreage, and had no interest in the matter; that the defendants thereupon arranged with the Elaine Oil Company to furnish the money to take up these notes.

The plaintiff gives a different account of what took place between him and the de-

fendants in regard to this payment, but the undisputed evidence in the case shows that the Elaine Oil Company did issue its check for the sum of $1,000, dated April 28, 1928, payable to the plaintiff, and in the body of the check it was recited that it was in full payment of the three notes, two for $500, one for $1,000 of the defendants, and that the three notes in question were each marked on the face thereof "Paid, W. L. W.," and these notes were surrendered to the defendants. This check was made out on April 28, 1928, and was delivered on May 10, 1928, and paid by the bank on which it was drawn on May 11, 1928.

There the matter rested until on January 15, 1931, the plaintiff filed suit on the original $3,500 note in the court of common pleas of Tulsa county, to recover $1,000 and interest, which he claimed to be due on the original note, and in which action the defendants pleaded payment thereof and accord and satisfaction by the payment of the $1,000 by the Elaine Oil Company and the surrender of these notes by the plaintiff to the defendants.

Under the guise of an accounting, this was really a suit on a promissory note. The judgment rendered by the court was for $1,000, together with interest at the rate of 10 per cent. per annum on $3,100, which represented the promissory note in question after the first credit of $400 was paid thereon on June 10, 1926, and from June 10, 1926, to September 4, 1926, the next payment, although the date should have been September 14th, and so on.

This court said in the case of Turner v. Cox, 138 Okla. 225, 280 P. 568, in the sixth paragraph of the syllabus, as follows:

"It is a general rule in actions at law that, in order to enable plaintiff to recover or defendant to succeed in his defense, what is proved or that of which proof is offered by the party on whom lies the onus probandi must not vary from what he has previously alleged in his pleadings; and this is not a mere arbitrary rule, but is one founded on good sense and good law."

In the body of the opinion, we further said:

"In the case of Chambers v. Van Wagner, 32 Okla. 774, 123 P. 1117, this court said:

" 'It is a general rule in actions at law that, in order to enable plaintiff to recover or defendant to succeed in his defense, what is proved or that of which proof is offered by the party on whom lies the onus pro-

bandi must not vary from what he has previously alleged in his pleadings; and this is not a mere arbitrary rule, but is one founded on good sense and good law.'

"In Herbert v. Wagg, 27 Okla. 674, 117 P. 209, in passing upon this question, this court announced the same rule, thus:

" 'A party bringing an action is required to frame his pleading in accord with some definite, certain theory, and the relief to which he claims to be entitled must be in accord therewith; on appeal he is bound by the position and theory assumed and on which the case was heard in the trial court.'

"To the same effect is Gunn v. Jones, 66 Okla. 321, 169 P. 895, and Stockman v. Loeser, 83 Okla. 190, 201 P. 499.

"So we hold that this issue was not properly presented by the pleadings or raised in the trial court to authorize this court to here review the same."

Supporting the rule above announced are the following recent cases: Citizens' Bank of Gans v. Mabray, 90 Okla. 63, 215 P. 1067; Oklahoma Produce Co. v. Cotton Products Co., 111 Okla. 257, 239 P. 656; Union Tool Co. v. Wilson, 259 U. S. 107; Indian Refining Co. v. Marcrum (Ala.) 88 So. 445; Miller v. Thomas, 200 Ill. App. 125; Pittsburg, C. C. & St. L. Railway Co. v. James (Ind. App.) 114 N. E. 833; Webb v. Webb (Ky.) 255 S. W. 137; Wilcox v. Kansas City Western Railway Co. (Mo. App.) 213 S. W. 156; Scovel v. Isham (Neb.) 202 N. W. 869; State v. Board of Commissioners (N. M.) 166 P. 906; Bates v. Dipple (Tex. Civ. App.) 242 S. W. 541; Raymond v. Merchants' State Bank & Trust Co. of Laredo (Tex. Civ. App.) 270 S. W. 943; Seaver v. Lang (Vt.) 104 Atl. 877.

The record is replete with objections made by the defendants to the introduction of evidence, and to the procedure followed in this case. While it is true that the defendants introduced evidence in support of their contention that this note was paid by the check for $1,000 in a manner to constitute an accord and satisfaction, nevertheless, the record shows that they were objecting at all times to being required to try such question upon the issues as made. The issues as actually tried are so at variance with those framed by the pleadings in the case and the entire proceedings were so irregular, that the judgment of the trial court cannot stand.

We have read the record in this case and the briefs of counsel on both sides, in an effort to reach a correct conclusion and to

avoid, if possible, a reversal of the case, to no avail.

This being an equitable action, this court might remand the case, with instructions to render such judgment as it deems proper, but we have determined that in order to protect the interest of all parties hereto, the ends of justice will be best subserved by reversing the case, and remanding it to the lower court for further proceedings in the light of our views as herein expressed.

The judgment of the trial court is reversed and the cause remanded, with directions to set aside the judgment heretofore rendered in favor of the plaintiff and to proceed further in said cause in a manner not inconsistent with this opinion.

The Supreme Court acknowledges the aid of Attorneys P. C. Simons, L. E. McKnight, and C. F. Dyer in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Simons and approved by Mr. McKnight and Mr. Dyer, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted as modified.