**JOHNSTON, Trustee in Bankruptcy, v. AMERICAN FINANCE CORPORATION.**

No. 27001. March 22, 1938.

Rehearing Denied May 17, 1938.

ruptcy of the estate of C. B. Green, a bankrupt, against the American Finance Corporation for an accounting and discovery.

The plaintiff alleges in his petition that the defendant holds certain notes and mortgages deposited by C. B. Green as security for certain indebtedness due the defendant, the nature, amounts and number of which are not fully known to plaintiff. It is alleged that the defendant was to hold and collect same and apply the proceeds on the indebtedness owing defendant. It is alleged that plaintiff has made demands upon the defendant for full accounting of all liabilities claimed against the bankrupt, and all collections made on such collateral and money owing to the bankrupt and for the uncollected collateral, and that defendant has refused to render such accounting or deliver to the plaintiff said collateral.

The plaintiff petitioned for a full accounting and for judgment against the defendant for such sum as may be due to plaintiff and for costs.

Answer was filed consisting of general denial, want of sufficient allegations in the petition to constitute a cause of action in accounting, and alleging that plaintiff had obtained a full and complete audit of the transaction and had knowledge of the facts. Upon the hearing of the cause the trial court found the defendant liable to account and ordered defendant to file its account, and the account was filed accordingly. The plaintiff filed exceptions to the account, and the defendant filed its answer to the exceptions of the plaintiff.

The matter was heard before the referee, upon the account, the exceptions, and the answer thereto. The referee made his report, with findings of fact and conclusions of law. The plaintiff filed his exceptions to the report of the referee and claimed usury on certain of the notes. The defendant filed its exceptions and objections to the referee's report and denied the right in equity to claim usury and plead the statute of limitations. The court sustained the report of the referee. The plaintiff has appealed.

Roger Stephens, Fred L. Hoyt, and F. Leonard Sibel, for plaintiff in error.

Abernathy & Howell, for defendant in error.

DAVISON, J. This action was instituted by Gordon Johnston, as trustee in bank-

The record discloses that the defendant was engaged in the purchase and discounting of automobile papers from various automobile dealers and other concerns and upon which defendant made direct loans. It is shown that C. B. Green and his father, W. O. Green, were engaged in various lines

of business involving considerable sums of money; that in addition to the Broadway Billiard Supply Company business of C. B. Green, his father owned, either separately or in connection with C. B. Green, a transfer business with a number of trucks used as common carriers, operated under the name of P. D. Q. Transportation Company.

The record discloses that W. O. Green died August 19, 1929, and that C. B. Green was appointed administrator of his estate, and as such he continued to operate the transfer company under the order of the county court. In connection therewith, C. B. Green had numerous transactions with the defendant in which considerable sums of money were borrowed. There seems to have been an agreement between the defendant and C. B. Green that notes which had been given to C. B. Green as part consideration for merchandise sold and payable in monthly installments for a period of one year and less would be taken by defendant as collateral for money advanced to C. B. Green. Some of the notes given the defendant by C. B. Green were signed by Green as administrator and some individually. The record shows that there was a charge of 10 per cent. of the amount loaned which was denominated as carrying charges. The plaintiff by counterclaim or set-off claimed usury in the transactions.

Eight assignments of error are presented for consideration. It is first contended that the referee and court erred in their method of applying the usury statute to the facts developed in connection with the Supply Company notes.

The referee and the trial court refused to allow the plaintiff the penalties and forfeitures for usury and required plaintiff to pay legal interest upon the money borrowed from the defendant by the bankrupt. The rule adopted by the referee and the court was that equity abhors and will not enforce penalties and forfeitures, and that he who seeks equity must do equity. This suit was brought by the plaintiff. It is a suit in equity for discovery and for an accounting on notes and mortgages deposited with the defendant as collateral. The plaintiff alleges in his petition that the nature, amount, and number of such securities is not fully known to the plaintiff. The particular objection to the finding of the referee and court is their refusal to apply the forfeiture of double the amount of usury found to exist in the notes in view

of the usury statute. The defendant should not be deprived of a jury trial and of the plea of the statute of limitations by bringing a suit against it in equity and then refuse to apply the rules of equity merely because the plaintiff had an adequate remedy at law for usury.

"One seeking the affirmative aid of equity for relief against an alleged usurious agreement must himself do equity by tendering or offering payment of what is justly due. Hubbard v. J. Kennedy Todd et al., 171 U. S. 474, 43 L. Ed. 246.

"In cases of usury, courts of equity will give no relief to the borrower if the contract be executory, except on the condition that he pay to the lender the money lent, with legal interest. Nor if the contract be executed will they enable him to recover any more than the excess he has paid over the legal interest." Tiffany v. Boatman's Savings Institute, 85 U. S. 375, 21 L. Ed. 868.

These penalties the plaintiff seeks to enforce are given by statute. They are legal rights to be administered in legal actions, or as defenses, but not as affirmative equitable rights, where the debtor, an actor, voluntarily comes into court asking for equitable relief. We think the finding of the referee and court is correct.

It is next contended that the referee and court erred in allowing the defendant an arbitrary 3 per cent. of its collection from the Supply Company collateral, as compensation for its efforts in making collections, after having found there was no special agreement to pay for this service.

In his 18th finding of fact, the referee allowed defendant $1,756.31 on the ground that 3 per cent. of its collections from the Supply Company collateral as compensation for its efforts in making collections was reasonable. The plaintiff contends that in the absence of a contract the defendant was entitled to no compensation whatever. The referee found that there was an agreement between C. B. Green and defendant for the collection of the principal and interest on these notes and conditional sales contracts deposited with defendant as collateral security to notes Nos. 1 to 23, inclusive, but there was no agreement as to the amount of compensation to be received, although there were negotiations between them concerning same. The sum of 3 per cent. of the amount collected was found by the referee and court to be reasonable. This sum appearing to be reasonable in amount, this court will not search a vol-

uminous record to ascertain the full nature and extent of the negotiations and agreement between the plaintiff and defendant relative to the amount to be paid for collection, but holds that the amount is reasonable and was rightfully allowed.

It is next contended that the referee and court, by means of an improper grouping of notes, in effect, erroneously held that obligations other than the Supply Company notes were by terms of said notes payable out of the Supply Company collateral. The contention here seems to be that the court erred in holding that the collateral put up by C. B. Green was liable for other notes and obligations of Green besides his obligation as represented by the Supply Company notes.

The record very conclusively shows that this defendant had many dealings with Green and the various institutions with which he was connected. The plaintiff does not dispute the fact that Green is liable for all of the notes, but contends that the court erred in holding that collateral put up for the Supply Company notes was also liable for the other notes of Green held by the defendant.

The referee reported in his finding No. 7 (R. 2561) that the Supply Company note No. 2 (R. 419 A) was a fair specimen of the collateral note forms used by the Supply Company in notes executed in favor of the defendant, and that all such notes contained a clause substantially as follows:

"* * * have deposited with and pledged to the said _____, his successors or assigns, hereinafter called the pledgee, as collateral security for payment of the above and foregoing note and all other liabilities of the undersigned, either as principal, endorser or otherwise, on this or any other obligation to said pledgee, heretofore or hereafter contracted, the following property, viz.: * * *"

The referee and the court held that it was the intention of the parties to secure the indebtedness represented by the P. D. Q. Transfer Company notes.

The plaintiff has cited several authorities in support of his contention, among which is the case of First Nat. Bank of Ardmore v. Gillam, 134 Okla. 237, 273 P. 261, wherein this court held that in that case it was clearly shown from attendant circumstances that it was not the intention of the parties to the mortgage to secure indebtedness set out, even though such mortgage has a printed provision that same was to stand as security for "all other indebtedness and liabilities * * * whether evidenced by note or otherwise now existing or hereafter arising, due or to become due." The court held that this provision will not be construed as covering other indebtedness then in existence, that there was no meeting of minds of the parties whereby such other indebtedness was to be secured. In that case it was clearly shown that such other indebtedness was then in existence and the amount could easily have been ascertained and specifically mentioned in the mortgages. In the First Nat. Bank of Ardmore v. Gillam Case, supra, this court said:

"It may be definitely said that mortgages given to secure a specified sum and for future advances are everywhere considered legal, except perhaps in one or two jurisdictions. Mortgages of this class, like mortgages of indemnity, or mortgages to secure against official neglects, must necessarily be intended to secure indefinite and uncertain sums at the time the mortgages are executed."

When we consider the facts in the instant case, we can readily see why the referee and court arrived at the conclusion that such pledged property should cover all indebtedness of C. B. Green. From time to time the defendant was advancing money to Green and making him loans over a period of years. These transactions were in the nature of continuing business transactions. The indebtedness intended to be secured could not have been definitely mentioned and set out, since much of same was not then in existence. It appears that a great portion of the money represented by the P. D. Q. notes was advanced after the execution of the Broadway Billiard Supply Company notes, by which this collateral was pledged. We find nothing in authorities cited by the plaintiff that would prevent the referee and court from finding, as a matter of fact, that it was the intention of the parties that such collateral was subject to payment of the other and various obligations of Green. Paschal & Bro. v. Bohannan, 59 Okla. 139, 158 P. 365. The holding of the trial court on this point will not be disturbed.

It is next contended that the referee and court erred in holding that the bankrupt's purported assignments of October 17, 1930, and the guaranty agreement of October 17, 1930, were valid as against the plaintiff. The assignments referred to are as follows:

"October 17, 1930.

"To the American Finance Corporation; I hereby assign all of my interest in notes up as collateral to you to take care of my debt of the P. D. Q. Freight Lines, or P. D. Q. Transfer, or W. O. Green, or the Broadway Billiard Supply Company.

"Signed and witnessed this 17th day of October, 1930.

"Broadway Billiard Supply Company

"C. B. Green"

"Witness: Ruby Batchelor

"Witness: Josie Roberts."

"Nov. 6, 1930.

"I hereby assign, and transfer, and authorize the American Finance Corporation to charge any account that is delinquent, or anything that I owe, to be charged to the collateral which I have up (as Broadway Billiard Supply Company's notes) to that account, and oblige.

"Signed, C. B. Green

"Witness: Ruby Batchelor

"Witness: Josie Roberts."

The record shows that C. B. Green was adjudged to be a bankrupt on July 9, 1931. The plaintiff contends that neither of said assignments was executed on the date it bears, but was executed about the last of January, 1931, within less than four months prior to filing the petition in bankruptcy against C. B. Green, and that they were dated back, and that they were without consideration and are voidable as a preference at the instance of the plaintiff.

The referee found that the assignments were duly executed and delivered on the dates they bear, and for sufficient present consideration, consisting in an agreement on part of the defendant to forbear the immediate enforcement of past-due obligations of C. B. Green, or said P. D. Q. Freight Lines, P. D. Q. Transfer Company, or W. O. Green, and to extend additional credit to said C. B. Green.

The referee further found that C. B. Green was not then insolvent; even though pressed by creditors, his assets were more than sufficient at their face value to pay all of his liabilities; that if in fact C. B. Green was insolvent at the time, the defendant did not then know, or have reason to believe or have notice of facts sufficient to put it on inquiry and impute knowledge that Green was in an insolvent condition; that the assignments were fairly entered into for a sufficient consideration, and with no intent to hinder, delay, or defraud the creditors.

This court is asked to reverse the finding of fact made by the referee and lower court. The burden was upon the plaintiff in that court to sustain, by a preponderance of the testimony the fact that the assignments were fraudulent; that they were executed within four months of the date the bankrupt proceedings were instituted.

This court has considered the testimony relative to these assignments, and believes that the great weight of the testimony shows that the assignments were taken as of dates indicated thereon, and that as a consideration for these assignments, the defendant, American Finance Corporation, agreed to forego foreclosure of certain mortgages on certain trucks which were in arrears and agreed to and did extend further credit to C. B. Green.

In Kentucky Bank & Trust Co. v. Pritchett, 44 Okla. 87, 143 P. 338, this court said:

"Whether the bankrupt was insolvent at the time of the conveyance, and whether the transferee had reasonable cause to believe that the conveyance was intended thereby to give a preference, are questions of fact, determined by the findings of the court, and not open to review in this court." Kaufman v. Tredway, 195 U. S. 271, 49 L. Ed. 191; Ridge Ave. Bank v. Studheim, 145 Fed. 798, 76 C. C. A. 362.

The judgment of the court on this contention will not be disturbed.

It is next contended that the court committed error in holding that the defendant is not estopped to claim that the assignments of October 17, 1930, and November 6, 1930, and the guaranty agreement of October 17, 1930, are valid as against the plaintiff. It seems that this contention is based upon the fact that Kissick, the secretary and manager of the defendant American Finance Corporation, led the Wendt Billiard Manufacturing Company, or its attorney, Henry Griffing, one of the creditors of C. B. Green, to believe that there was sufficient equity in the collateral held by the American Finance Corporation to pay Green's creditors, and further made the statement that the assignments and guaranty agreement from Green to the Finance Corporation is estopped from claiming under these assignments and guaranty agreement. Kissick denied making the statement that the assignments were taken as a matter of form as testified to by Griffing, the attorney for the Wendt Billiard Manufacturing Company. It is admitted that there was a conflict in the testimony, and

it is not for this court to say which testimony should have received the most consideration.

The general proposition contended for by the plaintiff is that where a person by his conduct induces another to believe in the truth of a particular state of facts, and the other party acts thereon to his prejudice and detriment, the informant is estopped as against the latter to deny that such facts exist. As a general statement of the law that contention is correct, but if the facts testified to by Mr. Griffing were undisputed, we would still be unable to see where that would be a basis for the application of the doctrine of estoppel as against the defendant, American Finance Corporation, under the assignments and guaranty agreement heretofore mentioned.

Mr. C. F. Bunch testified that he was calculating on buying a part of the Broadway Billiard Supply Company business; that Kissick had told him in the early part of January, 1931, that the American Finance Corporation had assignments of the collateral protecting the P. D. Q. and W. O. Green notes; that Kissick gave witness a statement of the amount secured by the collateral; that it included the balance due on Broadway Billiard Supply Company notes, the W. O. Green notes, the P. D. Q. notes, and the C. B. Green notes. Bunch further testified that he gave a full statement of these amounts to Mr. Griffing, and thereafter the Wendt Billiard Manufacturing Company took an assignment from C. B. Green to the same securities. This assignment specifically provided that said assignment is taken subject to any prior valid assignment that the American Finance Corporation might have. The assignment was dated January 30, 1931. It certainly cannot be disputed that the Wendt Billiard Manufacturing Company had full knowledge that the defendant American Finance Corporation had a prior assignment upon the collateral in question. The Wendt Billiard Manufacturing Company was a creditor of the Broadway Billiard Supply Company, claiming under an open account without security.

It was doubtless disappointing that the equity in the collateral assigned would not be sufficient to pay the indebtedness of the Wendt Billiard Manufacturing Company. As to how much money would be collected on the collateral was merely speculative, and no statement by Kissick, the secretary and manager of the defendant company, relative thereto, amounted to either an assurance or promise on part of the defendant company. We cannot see in what way the Wendt Billiard Manufacturing Company changed its position or relation because of the alleged information which plaintiff contends was not true, and no rule of estoppel could apply.

The finding of the trial court on this contention will not be disturbed.

It is next contended that if the defendant is not estopped to show the validity of the assignments and guaranty agreement, as set up in the last contention, then the referee and trial court erred in their method of applying the usury statute to the facts developed in connection with certain of the P. D. Q. notes and other notes.

The notes referred to here were included in group three as designated by the referee, and consist of Nos. 38, 41, 42, 44, 49, and 50. The record shows that notes Nos. 49 and 50 were purchased by defendant from Myers Motor Company and Ellis-Young Motor Company, respectively, and had been given to these companies by C. B. Green. There is no contention that these notes were not purchased from the payees for a valuable consideration, and C. B. Green would not be in a position to claim usury in the payment on notes 49 and 50 out of the collateral assigned to the defendant which secured the same.

As to notes Nos. 38, 41, 42, and 44, the record shows that these notes were signed by the P. D. Q. Transfer Company. It is contended that the referee and court erred in holding that these notes were not subject to the claim of usury as contended for by the trustee in bankruptcy. These notes are not signed by Green and are not his obligations. The record shows that the P. D. Q. Transfer Company was owned and operated by W. O. Green, the father of C. B. Green, and that after his death C. B. Green, as administrator, operated the transfer company. The record further shows that in the two assignments of October 17, 1930, and November 6, 1930, and the guaranty agreement of October 17, 1930, C. B. Green guaranteed the payment of these notes, along with other notes which were his personal obligations. There was some payment applied on note 41 which had been received from collections on the collateral conveyed by Green to the defendant, but none was applied on the other three notes.

The contention seems to be that, since C. B. Green guaranteed these notes with the collateral conveyed to the defendant company, though Green had no obligation upon the original notes, his trustee in bankruptcy is entitled to claim usury where the notes are shown to be usurious. Green had no connection with these notes until he guaranteed payment of the same. This guarantee on part of Green was in consideration of other concessions granted him by the defendant, including an agreement not to sue and foreclose certain mortgages held by the defendant on equipment belonging to C. B. Green.

The plaintiff contends that section 9519, O. S. 1931, gives the right of action to a person to sue for usury who has paid the obligation, and that no distinction is made between a maker, a surety, or guarantor. That would likely apply if Green had been guarantor in the original transaction or making of the obligations. But it is shown that his first connection with these obligations was when he guaranteed payment of same upon certain consideration received.

In First State Bank of Pond Creek v. Bank of Jefferson, 112 Okla. 177, 240 P. 311, this court held:

"The provision of our statute, section 5098, Comp. St. 1921, authorizing the recovery of usurious interest charged or collected applies alone as between the original parties to a usurious contract or their legal representatives and does not apply as to parties who were not parties to such contract."

We are convinced that this contention is without merit, and the finding of the trial court will not be disturbed.

It is next contended that the referee and court erred in refusing to hold that the defendant converted to its own use all of the unpaid collateral of the Broadway Billiard Supply Company, and in their refusal to render judgment for the plaintiff in connection with such conversion.

We are unable to find any merit in this contention. It has been fully shown under previous contentions considered herein that the defendant held the collateral under a contract with Green as security for certain indebtedness due by Green. It is nowhere disputed that defendant was authorized to make collections on the collateral. If it had been shown to be true that collections were made thereon in an amount to exceed the amount due defendant, it would not in any sense be a conversion of such collateral belonging to the bankrupt. The balance of the collateral was delivered to plaintiff under order of the court. It was the contention of the defendant, and still is, that it has never been paid the full amount that is due it. If, after notice by plaintiff to deliver the collateral, the defendant kept some for the purpose of making further collections with which to pay the balance due on the notes for which such collateral was pledged, such act certainly would not amount to an appropriation or conversion of the property.

The finding of the court on this contention will not be disturbed.

It is contended that the referee and court erred in denying the plaintiff an attorney's fee in connection with this litigation.

It appears that the plaintiff contends for an attorney's fee upon two theories: First, that defendant brought an action to enforce a lien, and the plaintiff securing judgment therein would be entitled to a reasonable attorney fee; and, second, that this being an action to recover penalties authorized by usury statute, under such statute, plaintiff would be entitled to an attorney fee.

The plaintiff brought this action for an accounting and discovery. The record does not disclose that defendant brought any action or by any pleading asked for affirmative relief. Section 11021, O. S. 1931, provides:

"In an action brought to enforce any lien, the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

This action was not brought to recover the penalty for usury prescribed by section 9519, O. S. 1931, whereby section 9524, O. S. 1931, cited and relied on by plaintiff, could apply authorizing an attorney fee.

This question has been heretofore discussed. We are, therefore, unable to agree that plaintiff would be entitled to attorney's fee under the statute governing either theory presented.

The record in this case shows that months were spent by the referee in the consideration of this case. The record is voluminous. The referee came in direct contact with all of the transactions involved and all of the parties concerned. When the plaintiff's exceptions to the report of the referee were filed, the issues were again considered and

argued before the trial court. That court approved the findings of the referee, and this court is convinced that the findings of the court are supported by the great weight of the testimony introduced. The judgment of the trial court is affirmed.

OSBORN, C. J., and RILEY, WELCH, PHELPS, CORN, GIBSON, and HURST, JJ., concur. BAYLESS, V. C. J., absent.