**Hulda Elizabeth EVENSEN, and Edward Colton Evensen, Appellants,**

v.

**PUBCO PETROLEUM CORPORATION, formerly Pubco Development, Inc., Appellee.**

**No. 6143.**

United States Court of Appeals Tenth Circuit.

Jan. 8, 1960.

Paul F. Larrazolo, Albuquerque, N. M., for appellants.

John L. Hauer, Dallas, Tex. (Turner, White, Atwood, McLane & Francis, Dallas, Tex., and Keleher & McLeod, Albuquerque, N. M., with him on the brief), for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge and CHRISTENSON, District Judge.

CHRISTENSON, District Judge.

Interpretation of a written contract of the parties relating to their respective interests in certain State of New Mexico oil and gas leases is involved in this case, which is jurisdictionally founded upon the diversity of their citizenship and the requisite amount in controversy. The trial court resolved the dispute by con-

struing the contract favorably to the appellee's contention.

Appellants assert here that the trial court erred in the following particulars: In determining that they were entitled to only a 3/16 working interest in a certain gas well which had been drilled by appellee on leased land pursuant to the parties' agreement; in receiving and giving effect to evidence extrinsic to the written contract to vary its unambiguous terms; in finding its meaning contrary to the clear weight of all the evidence even though the extrinsic evidence were to be considered; in denying appellants the right to an assignment of, and the proceeds from, a full 5/16 working interest in the well, and in terminating on a date prior to judgment the running of interest on such proceeds by reason of a tender asserted to be insufficient.

Appellants Hulda Elizabeth Evensen and Edward Colton Evensen, her son, who were plaintiffs below and who hereinafter will be referred to as the "Evensens," owned in joint tenancy three State of New Mexico oil and gas leases covering four 40-acre tracts in Section 36, Township 32 North, Range 11 West, N. M.P.M. These leases were assignable (except in undivided interests) but were subject to the requirement that any well drilled to the "Mesaverde" formation be located on a half-section drilling tract. The Evensens, in April, 1952, assigned their leases to Pubco Petroleum Corporation, hereinafter referred to as "Pubco" and simultaneously as a part of the same transaction executed with Pubco a written contract the terms of which have given rise to the present controversy.

This contract provided in substance that contingent upon the consent of certain other owners of oil and gas leases covering land in Section 36, Pubco would drill a well thereon to the Mesaverde formation and if it failed to do so within a stipulated time, would pay to Evensens a compensatory royalty of $21.25 per month. Provision was made for payment to Evensens of an overriding royalty of 1% of the value of any oil or gas produced from such well allocable to the acreage covered by the leases assigned by the Evensens to Pubco until such time as Pubco should recover from the production of the well 150% of its share of the drilling costs, limited in advance for the purpose to $80,000.

Paragraphs 4 and 5 of the contract deal with the rights of the parties in the event of, and following, the recovery by Pubco of 150% of its drilling costs. The exact location of the contemplated well within Section 36 was not known at the time the contract was executed; hence, the relationship between the acreage in a half-section unit and the acreage Evensens might have in the particular half-section on which the well would be drilled was not known. The provisions of paragraphs 4 and 5 therefore were made to depend flexibly upon which half of Section 36 the well actually would be drilled, in view of the requirement that the drilling tract be at least a half-section, and in view of the prospective communitization of the area.[1] As it turned out, the well was drilled in the west half of Section 36. Eliminating for clarity certain alternate provisions rendered inapplicable by the actual location and financing of the well, paragraphs 4 and 5 of the agreement read:

"4. * * * After Pubco has recovered * * * (* * * 150% of $80,000 in the event others shall not make contributions toward such well,) and the acreage assigned to such well shall be the N ½ or the W ½ of Section 36, Township 32 North, Range 11 West, N.M.P.M., Pubco shall be obliged to reassign to Evensens any and all interest Pubco received from Evensens under the Assignment of April —, 1952, on the

1. Following the execution of the written contract and as therein contemplated, Pubco entered into a so-called communitization agreement with other owners of leases in the west half of Section 36 to form the drilling tract for a Mesaverde well. Out of the eight 40-acre tracts in the half-section, three were covered by the leases acquired from the Evensens.

NE ¼ of the NW ¼ of Section 36
\* \* \*.

"5. In addition and simultaneous with the above and foregoing \* \* \* In the event a producing well shall be drilled by Pubco and the acreage allotted to such well shall be the W ½ of the section aforesaid, Pubco, after recovering 150% of its cost, as aforesaid, shall be obliged to assign to the Evensens ½ of ⅜, (or ³⁄₁₆) full participating and/or working interest in the well. \* \* \*"

At the trial, over Evensens' objection that the contract was plain on its face and that the admission of evidence concerning the transactions leading up to its execution violated the parol evidence rule, the trial court received oral and documentary evidence concerning such negotiations, and the conversations and understanding of the participants culminating in the written agreement.

In line with its tentative oral decision following the trial, the lower court in due course entered written findings of fact to the effect that the agreement in question was executed by the parties as a written memorial of a prior agreement, partly oral and partly written, providing in substance that after Pubco had recovered 150% of its proportionate part of the costs of drilling each well which might be drilled on the acreage which was the subject thereof, the Evensens were thereupon to receive a fraction of the working interest in the applicable communitized area proportionate to one-half of the acreage assigned by Evensens to Pubco which was committed to the communitized unit in question. The trial court further found that "Insofar as the intention of the parties is material herein," the parties did not intend their oral agreement to be altered by the written contract, despite the fact that the mechanics of the contract involved an assignment of 100% of plaintiffs' acreage, which was to be followed by communitization, and subsequent reassignment of record title and the non-communitized interests in specific 40-acre tracts,

rather than by the initial assignment by the Evensens of an undivided 50% interest in all leasehold interests owned by them in Section 36. The court concluded that the April, 1952 agreement was not ambiguous and that

"\* \* \* there is no need for the Court to consider or give any weight to parol evidence in determining its meaning, and the Court does not do so. There is no conflict between Paragraphs 4 and 5 of the contract, but, if there is, Paragraph 5 is specific and express with reference to the parties' agreement as to the working interests, and overrules and controls Paragraph 4. \* \* \*"

The lower court's judgment, accordingly, recognized a working interest in favor of the Evensens in and to the well in question only to the extent of ³⁄₁₆, and held that the reassignment to Evensens of the lease covering the NE ¼ of the NW ¼ of Section 36, Township 32 North, Range 11 West, N.M.P.M., San Juan County, New Mexico, would not vest in Evensens any additional working interest in, or to the proceeds from the sale of, the Mesaverde formation gas well. Included in the judgment was an order for the payment to Evensens of a ³⁄₁₆ share of such proceeds, together with interest on the amount awarded for the period April 1, 1956 to September 25, 1957, on which latter date the court found that Pubco tendered to the Evensens "\* \* \* the proceeds from the sale of natural gas and associated liquid hydrocarbons attributable to said three-sixteenths (³⁄₁₆) working interest \* \* \*."

Both sides concede in effect that the legal consequences of the contemplated communitization agreement would have to be read into paragraph 4 of their contract but each draws a different conclusion as to the effect of this circumstance upon the meaning crucial here. The Evensens say that the agreement for reassignment of "any and all interest Pubco received from Evensens \* \* \*", in the light of the intervening communitization of the tract, simply meant

that there would be a reassignment subject to the communitization agreement, which would give the Evensens the ¾₆ working interest allocable to this forty,[2] plus the deeper rights not affected by the communitization agreement. They point to the language of paragraph 5 that "In addition to and simultaneous with the above and foregoing * * *," they are entitled to the ¾₆ working interest therein reserved, and say that to hold that the communitized ¾₆ working interest should not go to them in addition to the ¾₆ working interest reserved in paragraph 4 would be to disregard this plain language.

The argument primarily relied upon by Pubco and accepted by the court was that the contract on its face unequivocally supported its position; that an agreement should not be implied from paragraph 4 of the contract to vary and enlarge paragraph 5's express stipulation for a ¾₆ working interest, and that such implication would require that other portions of the contract language be interpreted as having no meaning at all, or would be based on the further unreasonable assumption that the parties agreed to do something they knew would be impossible.

Without reviewing in detail the authorities cited by Pubco to support the lower court's determination, it may be noted that they are exemplified by Klebe v. United States, 263 U.S. 188, 44 S.Ct. 58, 68 L.Ed. 244; Wolfe v. Prairie Oil & Gas Co., 10 Cir., 1936, 83 F.2d 434 and Gulf Production Company v. Kishi, 1937, 129 Tex. 487, 103 S.W.2d 965; and their effect is summarized in 17 C.J.S. Contracts § 5, p. 321, "There can be no implied contract where there is an express contract between the parties in reference to the same subject matter."

But the short of the matter is that the Evensens' construction of paragraph 4 does not rest upon any implication. The reassignment of title to the 40-acre tract is expressly provided for, and if this carries with it rights in Pubco's well No. 8 it would not be by implication but by operation of law. Whatever it should carry by proper construction of paragraph 4 would be in addition to rights reserved in paragraph 5, again by the express terms of the latter and not merely by implication. Thus, the authorities relied upon by Pubco do not resolve the ambiguity; and even though it might be thought that they did, the invocation of their doctrine, being in the nature of a secondary aid to construction, would suggest such uncertainty as to commend resort to other secondary aids also.[3]

The difficulty lies in paragraph 4 in its relationship to the communitization agreement subsequently entered into, and revolves about the language "Pubco shall be obliged to reassign unto Evensens any and all interest Pubco received from Evensens under the assignment of April —, 1952 * * *." Whether the language quoted means what the Evensens contend, or what Pubco says it does, is not resolved by any other provision in the agreement or by the agreement as a whole. Undeniably, as urged by Pubco, under the Evensens' view of its meaning the contract would involve a literal impossibility. Because of the intervening communitization agreement, the same interest that Pubco received could not be reconveyed to them and, indeed, the communitized interest in a sense was not received by Pubco from them. Yet, by similar token, in Pubco's view of the agreement, a reconveyance of merely the deep rights pertaining to the 40-acre

2. The communitization agreement, consistent with New Mexico law (New Mexico's Compiled Statutes 1953, 7–11–39) provided that the gas extracted from the communitized tract shall be allocated among the leaseholds comprising said acreage in the proportion that the acreage interest of each leasehold bears to the entire acreage interest committed.

3. See A.L.I. Restatement, Contracts, § 236; Hutchinson Gas & Fuel Co. v. Wichita Natural Gas Co., 8 Cir., 1920, 267 F. 35; New Wrinkle, Inc. v. John L. Armitage & Co., 3 Cir., 1956, 238 F.2d 753.

tract in question, and with Pubco's retention of the working interest relating to the Mesaverde formation, would not amount to a reconveyance by Pubco of all rights it received from the Evensens either. Each position involves logical difficulty if we seek to apply the words literally or to reconcile the language by a process of reason unaided by extrinsic evidence of intention.

The finding of the trial court that the parties "did not intend their verbal agreement to be altered or changed by the written contract" suggests the view that the latter was not an integration.[4] Yet, the court's conclusion that the terms of the contract are controlling without reference to extrinsic evidence of intent indicates the contrary. Indeed, it rather clearly appears from the record that the parties adopted it as a complete expression of their agreement, and hence, the rules governing the interpretation of an integrated contract should apply. What the court undoubtedly meant was that while the written contract was intended to control the rights of the parties, it did in fact carry out the intent previously manifested by them.

During the trial the court did not expressly pass upon the question of whether the contract was ambiguous, although

inferring that in its view it was not. It did, however, receive over the objection of the Evensens evidence concerning prior negotiations between the parties or their representatives and concerning the intentions and understanding of the parties. At the close of the trial and in the findings of fact and conclusions of law it held expressly that the contract was not "ambiguous." In this latter conclusion we believe the lower court technically erred.

■ It is properly pointed out by 9 Wigmore, Evidence, 3rd Ed., § 2470, p. 227, that there must always be an association between words and external objects, and no matter how definite a contract may appear on its face, "words must be translated into things and facts." Thus, as recognized by the trial court, the contract in any event had to be appraised in view of the surrounding circumstances known to the parties at the time of its execution and these reasonably could be looked to without violating the parol evidence rule even though the contract were not deemed ambiguous.[5]

■ It is observed in passing that prior written as well as oral agreements may be precluded by the parol evidence rule.[6] It is unnecessary to here pass up-

---

4. "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted." 1 A.L.I. Restatement, Contracts, § 228.

5. Nash v. Towne, 5 Wall. 689, 18 L.Ed. 527, and Chicago, R. I. and P. R. Company v. Denver & Rio Grande R. Company, 143 U.S. 596, 12 S.Ct. 479, 36 L. Ed. 277. See also A.L.I. Restatement of the Law, Contracts, § 230, "Standard of Interpretation Where There Is Integration," which expresses the rule as follows:

"The standard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances

prior to and contemporaneously with the making of the integration, other than oral statements by the parties of what they intended it to mean."

6. Wigmore points out that though the word "parol" does essentially imply "oral", as used in the parol evidence rule it "must be understood to be employed in a purely unnatural and conventional sense" and that what is excluded by the rule may actually be written or oral. 9 Wigmore, Evidence, 3rd Ed., § 2400, p. 4. Williston also concurs with Wigmore that extrinsic written as well as oral agreements may be excluded by the rule. 3 Williston, Contracts, Rev. Ed., § 646. This view is carried over into the Restatement, Williston being the reporter of the American Law Institute's Committee on Contracts, § 237. American Jurisprudence seemingly limits the parol evidence rule to the exclusion of "prior or contemporaneous oral agree-

on the related question of whether written statements of prior intention are always thus precluded.[7] Upon the record in this case we hold that recourse to background circumstances, including previously written declarations, does not render the contract unequivocal. This is especially so in view of the circumstances relied upon by Evensens to show that there might have been good reason to change the entire understanding as reflected by correspondence when shortly before the date of the contract the new element of assignment of their whole interest by the Evensens and subsequent partial reassignment was suggested by Pubco for its own tax advantage.

Where, as in this case, it is infeasible to segregate such background circumstances from indications of the subjective intentions of the parties, and an admixture of oral and written declarations appears essential to remove or clarify uncertainties which otherwise are inherent in the instrument, there are commended a clear-cut recognition of the ambiguity and a full exploration of negotiations and understandings leading to the execution of the contract in order that the question of actual intent and other secondary aids to interpretation may be fully inquired into by both sides, and properly evaluated by the court.

This seems in end result about what the trial court did. After ruling on the Evensens' objections to the receipt of extrinsic evidence as noted above, it freely received, and often without further objection from either party, detailed evidence from those participating in the transaction concerning the circumstances which led up to the agreement, the correspondence and conversations connected therewith, and the understandings of the respective parties. Beyond this, Mr. Evensen, one of the plaintiffs, and Mr. Gorham, who had a major hand in negotiating the agreement for Pubco, were permitted to express freely their reason-

ing and arguments in support of their respective interpretations, and on surrebuttal, the Evensens presented another witness who testified concerning conversations forming a part of the negotiations. The record does not suggest that there was any information dealing with the intention of the parties or other matters of preliminary negotiations which was available to either side that was not presented. Nor does it appear that the court in arriving at the meaning of the contract did not appropriately consider other secondary aids.

Based upon this complete inquiry, while entertaining the view ultimately that the contract indicated unambiguously the same intent on its face, the trial court expressly found that "Insofar as the intention of the parties is material, the parties intended paragraph 5 of the agreement of April 7, 1952, to contain their entire agreement as to the working interest subsequently to be assigned to plaintiffs and they intended paragraph 4 to refer only to the nonunitized balance. * * * "

Interpretation of contractual language is a question of law, but where the meaning depends upon extrinsic evidence there may result a material conflict or possibility of more than one reasonable inference, and this presents a question of fact rather than law. J. T. Majors & Son, Inc. v. Lippert Bros., Inc., 10 Cir., 1958, 263 F.2d 650. A question of fact being involved, the trial court's finding is controlling in view of our conclusion that not only is it supported by substantial evidence but by the preponderance of the evidence, representing the more reasonable alternative upon the whole record.

Thus it cannot be said that the fact finder erred with reference to the question of the intention of the parties, apart from its conclusion that consideration of such actual intention was not necessary. In testing our conviction that no preju-

ments." 20 Am.Jur., § 1091, p. 954, but this points up the overly broad use of the term frequently encountered.

7. This problem is separately considered and answered in the negative by the Restatement, § 230, supra.

dicial error was committed in the latter connection, we have not been unmindful of the importance of the parol evidence rule [8] and related rules concerning the receipt of evidence extrinsic to written contracts. A general pattern for receiving, wholesale, extrinsic evidence in first instance without reference to whether a contract is ambiguous and the subsequent narrowing of consideration by the court to the face of the contract could involve a prejudicial process even though an apparently correct result might be achieved. But such a situation is not indicated here.

■ The overruling of the objections of the Evensens to the receipt of extrinsic evidence was correct. They were the only parties resisting full inquiry. It does not help them now that their reason was an erroneous belief that the contract on its face favored their own position. But both sides before the trial closed did in fact fully explore these matters. The trial court made findings based upon the totality of the evidence. There is nothing to suggest that in so doing it did not give appropriate consideration to all of the primary and secondary aids to interpretation which were invoked by the ambiguous contract. Its ultimate conclusion manifestly was correct. It decided the question of the actual intent of the parties in light of the extrinsic evidence despite its feeling that the contract on its face indicated the same result. The making of this finding out of an abundance of precaution was consonant with the spirit of modern procedure in that it was designed to avoid needless retrial because of possible error in the conclusion that the finding was unnecessary.

■ Only errors which affect the substantial rights of the parties would furnish a basis for remand.[9] The lower court properly received the extrinsic evidence, considered it and made a finding concerning it. It is not the province of a mandate merely to require the formal reconstruction or renunciation by a trial court of thought processes which have thus led without prejudice to the correct result.

■ Interest was computed by the court on the monthly payments allocable to the $3/16$ working interest to which the Evensens were held entitled, from the date the payments became due to September 25, 1957 when a tender was found to have been made by Pubco. This did not constitute error. There is some uncertainty in the record whether Pubco actually tendered an assignment of the $3/16$ working interest in addition to the accrued proceeds therefrom. But from a discussion with counsel for both parties at the time the court announced its oral decision, it was justifiably led to assume that neither the date of tender nor its legal sufficiency was questioned. The appellants now will not be heard to complain on this score. Moreover, it appears quite clear from the record that, if the formal tender of an assignment of the $3/16$ interest were not made on or about the assumed date, it would have been futile in any event by reason of the fixed position the Evensens theretofore had taken concerning their claimed entitlement to the full $5/16$ working interest.

The judgment of the lower court is affirmed.

**8.** The parol evidence rule " * * * is in no sense a rule of Evidence, but a rule of Substantive Law." 9 Wigmore, Evidence, Rev.Ed., § 2400, p. 3; see also

3 Williston, Contracts, Rev.Ed., § 631, p. 1813; 20 Am.Jur., § 1100, p. 963.

**9.** 28 U.S.C. § 2111; Rule 61, F.R.Civ.P. 28 U.S.C.A.