**FIRST NATIONAL BANK IN DALLAS,**
a National Banking Association, Plaintiff-Appellant and Cross-Appellee,

v.

F. McQueen ROZELLE, Defendant-Appellee and Cross-Appellant.

Nos. 72–1864, 72–1865.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 23, 1973.

Decided Jan. 31, 1974.

Rehearing Denied May 8, 1974.

Peter B. Bradford, Oklahoma City, Okl. (Judson S. Woodruff, and McAfee, Taft, Cates, Mark, Bond & Rucks, Oklahoma City, Okl., on the brief), for plaintiff-appellant and cross-appellee.

James D. Grigsby, Oklahoma City, Okl. (Andrew Wilcoxen, Muskogee, Okl., on the brief), for defendant-appellee and cross-appellant.

Before PHILLIPS, HILL and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This diversity action by the bank seeks recovery on several notes and foreclosure against defendant Rozelle's interest in oil and gas leaseholds and personal property thereon in Hughes County, Oklahoma. The trial court denied foreclosure, holding that a proper tender had been made on the indebtedness secured by the mortgage and that other indebtedness asserted by the bank was not covered by the mortgage, or had been paid. Recovery was also denied on Rozelle's counterclaim for damages arising from allegedly wrongful refusal to release the mortgage on proper tender. Both parties have appealed. We are unable to agree with the conclusion of the trial court in ruling against the bank as to the coverage of the mortgage, but agree with the denial of recovery on the counterclaim.

The background facts concerning the transactions between the bank and Rozelle extend back for several years. The Hughes County mortgage, which is the focal point of this controversy, was executed in August, 1967, by Rozelle in connection with the borrowing of $40,000 for secondary recovery operations on the mortgaged leasehold properties in Hughes County. A note for $40,000 (note 1) was executed contemporaneously therewith. This debt was paid but additional borrowing occurred, evidenced by a $100 note (note 2) made in September, 1969, to keep the Hughes County mortgage alive, and a $15,000 note (note 3) executed in October, 1969. There is admittedly a balance owing of $9,100 on these notes.

It is undisputed that Rozelle made a tender of this $9,100 balance before commencement of this foreclosure suit. Rozelle maintains the bank wrongfully refused the tender and refused to release the mortgage for satisfaction of all the indebtedness covered by it. His counterclaim is premised on the statutory liability for refusal to release a mortgage as provided by 46 O.S.A. § 15. The bank maintains that it was entitled to reject the tender and to refuse release of the mortgage because a future advance clause and omnibus provision of the mortgage brought other unpaid in-

debtedness within the security of the mortgage.

The additional indebtedness in question was represented by three notes executed in September, 1969—one for $109,580 (note 4); one for $50,000 (note 5); and a third for $2,500 (note 6). These funds were to be used in connection with Rozelle's ranching operations on land in Pushmataha County, Oklahoma. A second mortgage was given by Rozelle on the Pushmataha County real estate to secure these notes.

In connection with the Pushmataha County ranching operations, Rozelle had borrowed larger amounts from Connecticut General Life Insurance Company and gave a first mortgage to the company as security. Connecticut General brought a foreclosure action in the trial court against Rozelle and also joined the bank. A decree for foreclosure of the first mortgage was entered, which has been affirmed. Rozelle v. Connecticut General Life Insurance Co., et al., 471 F.2d 29 (10th Cir.), cert. denied, 411 U. S. 921, 93 S.Ct. 1549, 36 L.Ed.2d 314. In that suit the bank cross-claimed against Rozelle for recovery on notes 4, 5 and 6 relating to the indebtedness incurred in connection with the Pushmataha County ranching operations. As reflected by the Court's opinion and the brief of the bank on this appeal, judgment on those three notes was entered against Rozelle and in favor of the bank.

There was also an additional indebtedness of Rozelle and his mother which had been incurred in connection with cattle operations. In May, 1967, Rozelle and his mother borrowed $50,000 from the bank for the purchase of cattle. They gave a promissory note to the bank for this amount (the cattle note) and it was secured by a deed of trust on land in Garland, Texas. As will be detailed further, the bank did not seek recovery on this note in its complaint in this case, but there was a considerable amount of proof concerning this indebtedness at trial.

The foreclosure case before us now was tried to the court. The court found that in July, 1970, payment of the $9,100 balance due, plus interest, on the Hughes County indebtedness was tendered by Rozelle; that the bank refused this tender and the demand for release of the Hughes County mortgage on the ground that the bank considered the mortgage as security for all of Rozelle's indebtedness to the bank which then was substantially in excess of the amount tendered; and that this refusal by the bank was made in good faith. The court found that Rozelle's evidence was wholly inadequate to prove that at any time material to the case the bank had been guilty of bad faith or had intentionally acted in an arbitrary, capricious, malicious or oppressive manner toward Rozelle. The court concluded that the counterclaim was without merit and should be denied.

The court found further that Rozelle had executed the Pushmataha County notes (notes 4, 5 and 6) and that they were not paid when due; that these loans were not within the contemplation of the parties when the mortgage on the Hughes County property was given and were unrelated to the activity or interest of Rozelle in that property; and that there was no specific intent on Rozelle's part that the omnibus provision of the Hughes County mortgage should include the loans on the Pushmataha County property. The court concluded that the security afforded by the Hughes County mortgage did not include notes 4, 5 and 6.

In connection with proof that concerned the cattle loan, the court found that the May, 1967, cattle note had been paid in full by Rozelle in January, 1968, and that the note was cancelled. The findings stated that, for reasons not satisfactorily explained by the bank, the entire amount of this obligation was transferred to the bank's ledger sheet for Rozelle as an indebtedness of his to the bank, and that the bank deemed itself secured by the Hughes County mortgage for this debt also.

As to the bank's right of foreclosure on the indebtedness that was held to be

secured by the Hughes County mortgage, the court concluded that Rozelle was entitled to a reasonable period of 30 days from the entry of judgment within which to renew his tender of the balance due of $9,100. At the expiration of such period the court concluded that if payment was not made, the note and mortgage would then be due and payable and the plaintiff bank entitled to foreclose.

Three principal issues are presented by the appeal and cross-appeal, to which we now turn.

1. *The Hughes County Mortgage and its future advance and omnibus provision.*

Our first question is whether the obligations relating to the Pushmataha County ranching operations became part of the secured indebtedness of the Hughes County mortgage by operation of its future advance and omnibus provision. The mortgage was executed on August 31, 1967, to secure note 1 for $40,000 and contained the following provisions:

"ARTICLE I—Secured Indebtedness

"1.1 Provided, however, that subject to the limitation expressed in Section 1.2, this Mortgage is given to secure the following indebtedness, obligations and liabilities: (a) One certain promissory note of even date herewith executed by Mortgagor, payable to the order of Mortgagee at its office in Dallas, Texas, in the principal sum of $40,000.00,

\* \* \* \* \* \*

"and any and all renewals or extensions of said note or notes, or any part thereof, (b) all indebtedness of Mortgagor to Mortgagee, arising pursuant to the provisions hereof, and any and all renewals or extensions of the same, or any part thereof, (c) all loans and advances which Mortgagee may hereafter make to Mortgagor,

and any and all renewals or extensions of the same, or any part thereof,

\* \* \* \* \* \*

"(f) all other and additional debts, obligations and liabilities of every kind and character of Mortgagor now or hereafter existing in favor of Mortgagee, regardless of whether such debts, obligations or liabilities be direct or indirect, primary or secondary, joint, several, or joint and several, fixed or contingent, and regardless of whether such present or future debts, obligations and liabilities may, prior to their acquisition by Mortgagee, be or have been payable to or be or have been in favor of some other person, or have been acquired by Mortgagee in a transaction with one other than Mortgagor, together with any and all renewals and extensions of such debts, obligations and liabilities, or any part thereof.

"1.2 The words 'Secured Indebtedness,' as used herein, shall mean all of the indebtedness, obligations and liabilities described or referred to above in paragraphs (a) through (f) of Section 1.1, provided however that the aggregate of the secured indebtedness exclusive of interest, attorneys fees and other charges shall never exceed the sum of *$150,000.00,* provided further that if the foregoing blank is not filled in such aggregate shall not exceed one million dollars." [1]

\* \* \* \* \* \*

"ARTICLE VI—Miscellaneous

"6.1 The rights, titles, interests, liens and powers hereunder are cumulative of each other and of all other rights, titles, interests, liens and powers which may now or hereafter exist to secure the payment of said indebtedness, or any part thereof. The security herein and hereby provided shall not affect or be affected by any other or further security heretofore or hereafter taken for the Secured Indebtedness, or any part thereof."

---

1. The figures of $40,000.00 and $150,000.00 are both typewritten in the original in the blanks.

As stated, the trial court found that the Pushmataha County loans (evidenced by notes 4, 5 and 6) were not within the contemplation of the parties when the Hughes County mortgage was executed and were unrelated to the activity or interest of Rozelle in the Hughes County property. And the court found there was no specific intent on the part of Rozelle that the omnibus provision should include those loans.

These findings are supported by direct testimony of Rozelle that he did not intend to finance any operation on the Pushmataha ranch when the Hughes County mortgage was made. He testified that the mortgage was not intended to secure the cattle loan. He also said in essence that he intended that the mortgage should be limited to loans for development of the single property (the Hughes County oil and gas leases described).

In addition there was testimony by Rozelle and the bank officers that the loan made contemporaneously with the Hughes County mortgage was discussed as being for the purpose of secondary recovery operations on the Hughes County leaseholds. Mr. Patterson, who made the loan for the bank, testified that the inception of Rozelle's borrowings under the mortgage was for oil and gas property development, although he could not say the funds were always used for those purposes verbally stated. And Rozelle testified that he discussed with Mr. Patterson his purpose that the loan was to pay for a " . . . well which [he] had just completed in 1967, producing well on the property. It's the principal purpose of the loan, the $40,000."

In addition there was testimony by both Rozelle and Patterson relating to the $150,000 limit inserted in the "Secured Indebtedness" portion of the mortgage, quoted above. Patterson said the significance of this amount was that this was the anticipated maximum that would be borrowed under this particular mortgage; that it was not necessarily limited to that, but at the time for the purposes of the borrowings requested by Rozelle, the figure of $150,000 was used as an arbitrary one. Rozelle said the " . . . $150,000 was the closest estimate [he] could come to at the time Mr. Patterson and [he] executed that deal as to what would be possibly required for the future development of that property."

The bank argues that the mortgage is unambiguous and must be construed without resort to parol evidence, and that the narrow coverage given the mortgage by the trial court ignored the plain, valid provisions of the instrument. Rozelle says that all the proof of the surrounding circumstances and intent as outlined should be considered. He contends that the record supports the findings and conclusions in his favor that the Pushmataha County loans were not within the contemplation of the parties when the Hughes County mortgage was executed and were unrelated to the activity and interest of Rozelle in the Hughes County property. And he points out that the Pushmataha County ranching loans were secured by a second mortgage on the Pushmataha County property.

We must agree that the surrounding circumstances and the relationship of the parties should be taken into consideration. We must place ourselves as nearly as possible in the position occupied by the parties when the instrument was executed and then read the provisions within the four corners of the agreement. First National Bank v. Gillam, 134 Okl. 237, 273 P. 261, 265. The contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. 15 O.S.A. § 163; see also Evensen v. Pubco Petroleum Corp., 274 F.2d 866, 871 (10th Cir.); Baca Land & Cattle Co. v. Savage, 440 F.2d 867, 872 (10th Cir.). And construing the contract in the light of the surrounding circumstances known to the parties at the time of its execution does not violate the parol evidence rule, even though the writing is not deemed ambiguous. Id. at

872, n. 2; Templeman v. Walker, 175 Okl. 366, 52 P.2d 737 (syllabus 2 of the Court). However, we feel consideration may not be given to the statements of either party as to their subjective intent in making the written contract. See Evensen v. Pubco Petroleum Corp., supra, 274 F.2d at 871, n. 5; Restatement of the Law, Contracts, § 230.[2]

Thus we should consider all the proof outlined above as to the surrounding circumstances—the evidence of Rozelle's operations and the transactions between the parties underlying the execution of the Hughes County mortgage, but not his statements merely of his own intent in giving the mortgage. The circumstances shown demonstrate that the $40,000 loan and the mortgage were undertaken to further the secondary recovery operations on the Hughes County leasehold. Moreover the $150,000 limit as to the "Secured Indebtedness" was related to the anticipated advances in connection with these oil and gas operations. Nevertheless the future advance and omnibus provisions in Article I are both clear and broad. By them the mortgage secures "all loans and advances which Mortgagee may hereinafter make to Mortgagor" and "all other and additional debts . . . of every kind and character of mortgagor now or hereinafter existing in favor of mortgagee . . ." We see nothing in the surrounding circumstances necessarily inconsistent with giving these terms their plain meaning and applying them so that the subsequent Pushmataha County loans to Rozelle are secured by the mortgage.

█ We feel the record does not support the conclusions reached by the trial court as to the limited scope of the mortgage. The finding that Rozelle had no specific intent that the omnibus provision should include the loans on the Pushmataha County property may not be sustained by his testimony as to such subjective intent on his part. Moreover the findings that Rozelle did not intend that the Hughes County mortgage would secure the Pushmataha County loans and that they were not contemplated by the parties to the mortgage are not controlling. Such an agreement to secure future advances must necessarily intend to secure sums that are indefinite and uncertain at the time the mortgage is executed. First National Bank v. Gillam, 134 Okl. 237, 273 P. 261, 265; Johnston v. American Finance Corp., 182 Okl. 567, 79 P.2d 242, 246.

█ A mortgage to secure future advances with terms extending the security to other obligations is recognized as valid in Oklahoma. See Gilpatrick v. Hatter, 258 P.2d 1200, 1203 (Okla.); Johnston v. American Finance Corp., 182 Okl. 567, 79 P.2d 242 (Syllabus 3 by the Court); First National Bank v. Gillam, 134 Okl. 237, 273 P. 261, 265; Paschal v. Bohannan, 59 Okl. 139, 158 P. 365. In construing a mortgage, any doubt or uncertainty as to the obligation secured operates against the mortgagee. First National Bank v. Gillam, supra, 273 P. at 265. And any fixed obligation, existing when a mortgage with such an omnibus provision is executed but not specified as secured by the mortgage, has been held not to be covered by such a provision. Id. 273 P. at 266. Nevertheless as to real and chattel mortgages, clauses of this nature have been upheld in Oklahoma and applied to sub-

2. We note that the bank offered some proof itself as to the purposes of the loans and the surrounding circumstances and that no objection was made by the bank to the admission of testimony of Rozelle as to his subjective intent concerning the coverage of the Hughes County mortgage. However, the parol evidence rule is recognized in Oklahoma and by this court as one of positive or substantive law and not merely one of evidence. See Mid-America Corp. v. Miller, 372 P.2d 14, 18 (Okla.); Evensen v. Pubco Petroleum Corp., 274 F.2d 866, 873, n. 8 (10th Cir.); see also IX Wigmore, Evidence (3d ed.) § 2400. Thus we conclude we should hold the proof of subjective intent must be disregarded, despite the lack of an evidentiary objection, in view of the clear terms of the mortgage.

sequent indebtedness, as the authorities demonstrate.[3]

■ In view of the clear provisions agreed to by the contracting parties here, and the subsequent indebtedness incurred by the mortgagor himself, we conclude that the omnibus provision brings the obligations of notes 4, 5 and 6 undertaken for the Pushmataha County operations within the "Secured Indebtedness" of the Hughes County mortgage.

### 2. The counterclaim for damages for refusal to release the Hughes County mortgage

■ Rozelle cross-appeals from the denial of recovery on his counterclaim. He argues that the record supports the trial court's findings and conclusions that the bank should have accepted his $9,100 tender of payment on the Hughes County mortgage. He says the findings and conclusions made required a judgment in his favor for statutory damages under 46 O.S.A. § 15 for wrongful refusal to release the mortgage when the proper tender was made. And he argues that there was indifference, inadvertence and inattention by the bank as to its rights in improperly seeking foreclosure for additional indebtedness, some of which had been paid, and the remainder of which was not covered by the Hughes County mortgage.

While the trial court found that the proper tender had been made, it was also found that the bank refused the tender and the demand to release the mortgage on the ground that the bank considered the mortgage as security for all of Rozelle's indebtedness to the bank which was substantially in excess of the amount tendered. And the court found that this refusal by the bank was made in good faith.

In view of our holding in part 1 of this opinion in favor of the bank the cross-appeal must fail. We have concluded that the bank was and is entitled to foreclosure of the Hughes County mortgage to satisfy the indebtedness on the Pushmataha County loans. Rozelle was not entitled to a release of the mortgage until all the secured indebtedness was paid, nor to damages for failure to release the mortgage. Paschal v. Bohannan, 59 Okl. 139, 158 P. 365, 367.

### 3. The cattle note

■ The bank argues that the trial court erred in making findings and a conclusion that the cattle note was paid. It says the issue was not within the pleadings and that the findings and conclusion may prejudice the bank in a foreclosure action in Texas relating to the loan.

The trial court found that on May 11, 1967, Rozelle and his mother executed and delivered to the bank their promissory note in the amount of $50,000 for the purpose of obtaining money with which to purchase cattle; that this note was paid in full by Rozelle on January 8, 1968, and the note was cancelled by the bank; and that for reasons not satisfactorily explained by the bank, however, the entire amount of this obligation was transferred to the bank's ledger sheet for Rozelle as an indebtedness of his to the bank, which the bank deemed to be secured by the mortgage on the Hughes County property.

The bank's complaint did not seek recovery on the May 11, 1967, note or any alleged renewal thereof. However, during cross-examination of the bank's witnesses it was stated that the cattle loan indebtedness was part of the recovery sought against Rozelle and that the $50,000 loan was secured by the Hughes

3. Such clauses have been scrutinized as suspect "dragnet" clauses, see First v. Byrne, 238 Iowa 712, 28 N.W.2d 509, especially where the mortgage is sought to be foreclosed to satisfy obligations acquired by the mortgagee from third parties. See 2 G. Gilmore, Security Interests in Personal Proper-

ty 918 (1965); Wood v. Parker Square State Bank, 400 S.W.2d 898 (Tex.). The case before us involves no such indebtedness. Furthermore, the rights of third parties are not involved and thus the question of priorities does not arise.

County mortgage. Following this testimony there was a substantial amount of proof by Rozelle tending to show that a renewal note on the May 11, 1967, note was paid and returned to him. During all such proof there was no objection or clarification by the bank that these matters were outside the issues.[4]

After the findings and conclusions were made by the court, the bank did move to amend the findings on the cattle note as outside of the issues. The motion was denied and the findings and conclusions were not changed as to these matters.

While the point is not free from doubt, we feel the findings and conclusion concerning the note should not be disturbed. At trial the bank did not complain of surprise or inability to meet the issues or that the evidence was outside the issues. Baca Land & Cattle Company v. Savage, 440 F.2d 867, 874 (10th Cir.). In the posture of the record as the case was submitted to the trial court, it was reasonable to conclude that the status of the note was an issue tried out by consent. See Hopkins v. Metcalf, 435 F.2d 123, 124 (10th Cir.). In such circumstances the issue tried is treated in all respects as if it had been raised in the pleadings. Rule 15(b) F. R.Civ.P.

We believe the bank is not entitled to have the findings and conclusion on the note set aside. The trial court apparently felt the issue was properly before it, which was a reasonable conclusion. The findings on the point are amply supported by oral and written proof. Moreover we are satisfied that the findings and conclusion made did not make any determination adverse to the bank as to the existence of the indebtedness on the $49,900 and $100 notes which Rozelle admits he executed at about the time the $50,000 note signed by his mother and by him was found to have been paid.[5]

For these reasons the judgment is affirmed as to the denial of recovery on the counterclaim; the findings and conclusion pertaining to the payment of the $50,000 note of May 11, 1967, are sustained and are not set aside; otherwise the judgment is vacated and the case is remanded for entry of judgment on the indebtedness remaining on notes 2 and 3;[6] for a decree for foreclosure to satisfy the indebtedness remaining on notes 2, 3, 4, 5 and 6, and providing, however, that the "Secured Indebtedness" for purposes of such foreclosure shall not exceed the limitations provided by Article I of the Hughes County mortgage; and for further proceedings consistent with this opinion.[7]

---

4. Other objections were made but we feel the record does not fairly show an objection that the cattle note matter was outside the issues.

5. There was proof offered on behalf of Rozelle that the note of May 11, 1967, executed by Rozelle and his mother for the purchase of cattle, had been paid. Rozelle's proof was that he sent a check forward paying the note and interest; that the note, returned to him and offered in evidence, showed that it was paid; and that copies of ledger sheets given him in March, 1970, did not reflect any continuation of this obligation. He conceded that at about this time other notes for $100 and $49,900 were executed by him, contending they were related to other operations.

We note that Exhibit 25 offered by Rozelle was a note marked "Paid" for $50,000 dated October 30, 1967, by Rozelle and his mother to the bank, apparently a renewal note of the original cattle note of May 11, according to ledgers in evidence.

The bank maintained that the cattle loan was never paid, since the identical $50,000 obligation was continued in force by renewal notes executed by Rozelle.

6. Judgment is not to be entered on notes 4, 5 and 6 since judgment for recovery on these obligations has previously been entered in favor of the bank in the Connecticut General case, as stated above, No. 70–137 in the district court.

7. The vacating of these remaining portions of the judgment will set aside the award of attorney's fees in favor of Rozelle and will permit the court to reconsider the bank's claim for an attorney's fee in the light of this opinion. The additional provisions of the vacated judgment as to interest and funds in suspense may also be reconsidered and appropriate provisions made therefor when a new decree is entered.